IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
April 5, 2006 Session

## MARY WARREN KESSER v. PETER HALE KESSER

**Appeal by Permission from the Court of Appeals**
**Circuit Court for Shelby County**
**No. 147208-7 RD      Robert A. Lanier, Judge**

**No. W2003-02392-SC-R11-CV - Filed:   August 24, 2006**

The parties entered into a marital dissolution agreement that included both a provision requiring the husband to pay a fixed amount of child support each month and a provision requiring the husband to pay 21% of bonuses and all other income as child support.  After careful review, we conclude that the 21% provision is legally enforceable as part of the parties' agreement and that the 21% provision merged into the final decree of divorce and therefore became subject to modification.  Although the trial court found that a modification of both the fixed amount provision and the 21% provision was warranted, the trial court erred in failing to apply the applicable statute and the child support guidelines in effect as of the date of the hearing and in failing to consider the husband's adoption of three children in modifying the 21% provision.  The trial court properly refused to consider the husband's capital losses in calculating child support due from his capital gains.  Accordingly, the judgment of the Court of Appeals is affirmed in part and reversed in part, and the case is remanded to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed in Part; Reversed in Part; Case Remanded to the Trial Court**

JANICE M. HOLDER, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., and CORNELIA A. CLARK, JJ., joined.

Allan J. Wade and Lori Hackleman Patterson, Memphis, Tennessee, for the appellant, Peter Hale Kesser.

Darrell D. Blanton, Memphis, Tennessee, for the appellee, Mary Warren Kesser.

### OPINION

On July 25, 1995, Mary Warren Kesser and Peter Hale Kesser were divorced by final decree of the trial court.  The final decree of divorce incorporated the parties' written marital dissolution agreement ("MDA"), which provided for the custody and support of the parties' minor child and the

settlement of property rights between the parties. In accordance with the MDA, Ms. Kesser was awarded primary custody of the parties' child, and Mr. Kesser was required to pay child support.

Pursuant to the child support provision of the MDA entitled "Basic," the parties agreed that Mr. Kesser would pay Ms. Kesser $2,000.00 per month ("the fixed amount provision") and 21% of "all bonuses or other income as defined by the Tennessee Child Support Guidelines" ("the 21% provision"). The child support payable under the 21% provision was to be calculated net of taxes. The 21% provision was not applicable to the sale or liquidation of assets Mr. Kesser received from the distribution of property between the parties. The MDA provided that "[t]he parties acknowledge the amount of child support to be paid complies with the provisions of the Tennessee Child Support Guidelines."

In addition to the "Basic" child support, the parties agreed in the MDA that Mr. Kesser would pay the child's college tuition, room and board, and educational fees for four years up to a maximum aggregate amount equal to the costs for a boarding student at Dartmouth College, which Mr. Kesser had attended. The MDA provided that Mr. Kesser was not required to pay for the child's private school tuition.

At the time of the divorce, the parties were living in Memphis, Tennessee, where Mr. Kesser served as Vice President-Law, General Counsel, and Secretary of Arcadian Corporation ("Arcadian"). Mr. Kesser reported a yearly base salary of $160,000.00 and a monthly net income of $9,424.38. Following the divorce, Ms. Kesser and the parties' child moved to Houston, Texas, where the parties once lived, and Ms. Kesser procured employment as a teacher at a private school where the child was enrolled.

By the end of 1995, Mr. Kesser received from Arcadian a base salary of $164,500.00, a $25,000.00 bonus, and $17,932.00 in profit sharing, for a total of $207,432.00. In 1996, Mr. Kesser received from Arcadian a base salary of $173,500.00 and $80,036.00 in profit sharing, for a total of $253,536.00. In addition to the payment of $2,000.00 per month in child support, Mr. Kesser paid Ms. Kesser $4,014.00 in 1995 and $11,433.00 in 1996 pursuant to the 21% provision. Mr. Kesser did not pay any additional child support based upon capital gains that he received from investments during this time period.

In March 1997, Potash Corporation of Saskatchewan ("PCS") acquired Arcadian, and PCS did not continue to employ Mr. Kesser. On April 18, 1997, Ms. Kesser filed a petition for civil contempt alleging that Mr. Kesser violated the MDA in failing to provide full documentation of his income and in failing to fully comply with the 21% provision. Mr. Kesser denied he was in civil contempt and filed a petition on May 30, 1997, seeking to modify his child support obligations.

A trial was not held until July 9, 2003, more than six years after the parties filed their petitions. During the time prior to trial, Mr. Kesser continued to pay Ms. Kesser $2,000.00 per month in child support in accordance with the fixed amount provision of the MDA. Mr. Kesser, however, did not pay any child support required by the 21% provision.

After losing his job at Arcadian, Mr. Kesser remained unemployed through March 1998. From April 1998 until April 1999, Mr. Kesser served as Vice President and Assistant General Counsel of Promus Hotel Corporation ("Promus"). Since May 1999, Mr. Kesser has been a partner at the law firm of Baker, Donelson, Bearman, Caldwell & Berkowitz in Memphis, Tennessee. By the time of trial, Mr. Kesser had remarried and adopted two children.[1]

The trial court declined to reduce Mr. Kesser's child support obligation under the fixed amount provision of the MDA as a result of his loss of employment at Arcadian in 1997 and increased the amount of future child support. The trial court found that Mr. Kesser's net income was $17,341.58 per month. The trial court reduced that amount by 16% to $14,566.93 per month to reflect Mr. Kesser's duty to support his two adopted children and calculated Mr. Kesser's child support based upon 21% of $14,566.93, increasing Mr. Kesser's fixed monthly child support obligation to $3,059.00 to be paid directly to Ms. Kesser beginning in August 2003. The trial court found that because Mr. Kesser's monthly net income exceeded $10,000.00, the court was required to order a minimum monthly child support amount of $2,100.00. The trial court further found that Mr. Kesser should pay the additional amount of $959.05 per month to Ms. Kesser due to the child's enrollment in a private school with a yearly tuition of $12,000.00.

The trial court enforced the 21% provision of the MDA and ordered Mr. Kesser to pay child support in the amount of $5,304.00 for a $31,304.00 bonus in 1999, $8,652.00 for a $55,000.00 bonus in 2001, and $6,580.00 for a $40,000.00 bonus in 2002, as well as interest at 12% per annum. The trial court found that capital gains received by Mr. Kesser constituted income pursuant to the child support guidelines and should not be offset by capital losses before calculating the amount of child support due.

In December 2001, after years of litigation against PCS in federal court, the United States Court of Appeals for the Sixth Circuit held that Mr. Kesser was entitled to receive a net amount of $1,478,813.00 in severance pay as a result of his termination from Arcadian. The trial court found the severance constituted income subject to the 21% provision. Because the severance pay was greater than the $10,000.00 monthly net income contemplated by the child support guidelines, the trial court ordered that the additional amount of child support be placed in a trust for the benefit of the child until she reaches the age of twenty-five, at which time the remaining principal and interest will be distributed to the child. Finally, the trial court declined to find Mr. Kesser in civil contempt if he paid the sums due to Ms. Kesser within forty-five days.

The Court of Appeals upheld the trial court's judgment increasing the fixed amount of child support and enforcing the 21% provision. The intermediate appellate court remanded the case to the trial court with instructions as to the calculation of the child support award. We granted review.[2]

---

[1] Following trial, Mr. Kesser proceeded to adopt a third child.

[2] Mr. Kesser also raises issues regarding the trial court's calculation of taxes arising from the exercise of stock appreciation rights awarded to Ms. Kesser in the MDA, the trial court's decision regarding the method by which Ms.
(continued...)

# ANALYSIS

## A. Enforceability of the 21% Provision

Mr. Kesser contends that the 21% provision violates the Tennessee Child Support Guidelines ("the Guidelines") and, therefore, is unenforceable. We disagree. The Guidelines provide for the minimum base that should be used in calculating child support obligations. Tenn. Comp. R. & Regs., ch. 1240-2-4-.02(5) (1994); see Huntley v. Huntley, 61 S.W.3d 329, 334 (Tenn. Ct. App. 2001). In the case of an obligor with one child, the Guidelines provide for child support equal to 21% of the obligor's net income. Tenn. Comp. R. & Regs., ch. 1240-2-4-.03(5) (1994).[3]

At the time that the parties entered into the MDA, the Guidelines provided:

> The Court must order child support based upon the appropriate percentage of all net income of the obligor as defined according to 1240-2-4-.03 of this rule but alternate payment arrangements may be made for the award from that portion of net income which exceeds $6,250. When the net income of the obligor exceeds $6,250 per month, the court may establish educational or other trust funds for the benefit of the child(ren) or make other provisions in the child(ren)'s best interests; however, all of the support award amount based on net income up through $6,250 must be made to the custodial parent.

Tenn. Comp. R. & Regs., ch. 1240-2-4-.04(3) (1994). Pursuant to this provision, an obligor who has one child and a monthly net income of at least $6,250 per month is required to pay $1,312.50 per month in child support directly to the custodial parent. Any remaining amount of the child support obligation is subject to an alternative payment arrangement.

The Guidelines in effect at the time of both the divorce and the modification hearing provided that "[v]ariable income such as commissions, bonuses, overtime pay, dividends, etc., shall be averaged and added to the obligor's fixed salary." Tenn. Comp. R. & Regs., ch. 1240-2-4-.03(3)(b) (1994); see also Tenn. Code Ann. § 36-5-101(a)(2)(A) (Supp. 1995 & Supp. 2003) (authorizing courts to provide for future child support "by fixing some definite amount"). The 21% provision of the MDA differed from the computation required by the Guidelines. In lieu of averaging the variable amounts of income and adding the average to the basic child support calculation, the MDA required these amounts to be calculated separately with 21% of that amount to be paid as child support.

---

[2](...continued)
Kesser is to reimburse Mr. Kesser for travel expenses incurred as a result of his visitation with the child, and the trial court's award of attorney's fees to Ms. Kesser. Upon reviewing the record and the applicable law, we conclude that the trial court did not err with regard to these issues.

[3] This case does not involve the Income Shares Child Support Guidelines that became effective on January 18, 2005.

Mr. Kesser contends that the 21% provision is not enforceable because it does not comport with the Guidelines. In the present case, $2,000.00, the amount of child support that Mr. Kesser agreed to pay directly to Ms. Kesser pursuant to the fixed amount provision in the MDA is in excess of the amount required by the Guidelines in effect at the time the final decree of divorce was entered. The child support that Mr. Kesser agreed to pay directly to Ms. Kesser pursuant to the 21% provision also exceeded the amount required by the Guidelines. We conclude that parties may agree in an MDA to a child support obligation that exceeds the amount payable directly to an obligee parent under the Guidelines and to a method of calculating child support that differs from the mechanism contemplated by the Guidelines as long as the resulting child support meets or exceeds the amount mandated under the Guidelines. See Tenn. Code Ann. § 36-5-101(h) (Supp. 1995) ("Nothing in this section shall be construed to prevent the affirmation, ratification and incorporation in a decree of an agreement between the parties . . . as to child support."). The trial court also must find that the parties' agreement meets the minimum child support obligation provided under the Guidelines. The trial court in the present case made such a finding in the final decree of divorce. Accordingly, the 21% provision of the MDA is enforceable.

## B. Merger into the Decree of the 21% Provision

We next turn to the issue of whether the 21% provision may be subject to modification by the trial court. An MDA is a contract that generally is subject to the rules governing construction of contracts. Johnson v. Johnson, 37 S.W.3d 892, 896 (Tenn. 2001). Parents, however, have an independent legal duty to support their minor children. See Tenn. Code Ann. § 34-1-102(a), (b) (2001); Hopkins v. Hopkins, 152 S.W.3d 447, 449 (Tenn. 2004). An agreement between parties "with respect to," "dealing with," or within "the scope of" the legal duty to support their children during minority "loses its contractual nature" when merged into a divorce decree. Penland v. Penland, 521 S.W.2d 222, 224-25 (Tenn. 1975); see Blackburn v. Blackburn, 526 S.W.2d 463, 465 (Tenn. 1975). Because the provision merges into the decree, the child support obligation is subject to modification by the trial court. See Penland, 521 S.W.2d at 224; see also Tenn. Code Ann. § 36-5-101(a) (Supp. 2003) (authorizing a trial court to modify child support obligations).

If the parties agree to extend child support beyond the child's minority, however, that portion of the agreement is not merged into the final decree of divorce, retains its contractual nature, and is subject to the general rules of contract interpretation. See, e.g., Penland, 521 S.W.2d at 224-25 (holding that an agreement to pay all of the child's future educational expenses beyond the high school level was an obligation that continued beyond the child's minority and retained its contractual nature); Pylant v. Spivey, 174 S.W.3d 143, 151 (Tenn. Ct. App. 2003) (concluding that an agreement in an MDA regarding the payment of a child's college expenses is outside the parents' legal duty to support their child during minority and retains its contractual nature); Bryan v. Leach, 85 S.W.3d 136, 151-52 (Tenn. Ct. App. 2001) (holding that an agreement to pay support until the child reaches the age of twenty-two and college expenses is not modifiable but that the portion of the agreement relating to the child support obligation during the child's minority may be modified by the trial court); Richardson v. Richardson, 969 S.W.2d 931, 934 (Tenn. Ct. App. 1997) (concluding that an agreement disbursing the corpus of a trust that the father agreed to fund during the child's minority

to the child once the child was past minority retained its contractual nature). Any subsequent modification by a trial court of an agreement that retains its contractual nature would violate the constitutional prohibition against the impairment of contractual obligations. Blackburn, 526 S.W.2d at 465 (citing Tenn. Const. art. 1, § 20).

In the present case, the Court of Appeals held that Mr. Kesser's obligation pursuant to the 21% provision was contractual and not subject to modification by the trial court because the parties agreed to a greater child support obligation than required by the Guidelines. This holding ignores the language in Penland that agreements "with respect to," within "the scope of," or "dealing with" support during a child's minority are merged into the trial court's decree. See Penland, 521 S.W.2d at 224-25. We are unpersuaded that the advent of the Child Support Guidelines changes this analysis. Parents have always been free to provide more support than may be awarded by a trial court. Similarly, parents may agree to provide more child support than the base amount required under the Guidelines. See Barnett v. Barnett, 27 S.W.3d 904, 906-07 (Tenn. 2000) (enforcing a father's agreement to pay for all of his child's private school tuition in addition to the base amount required by the Guidelines). By so doing, an obligor does not pay support that is "outside" the Guidelines. To the contrary, the additional amount of child support paid by the obligor continues to be "with respect to," "dealing with," or within "the scope of" the legal duty to support his children during minority. See, e.g., Wade v. Wade, 115 S.W.3d 917, 921 n.2 (Tenn. Ct. App. 2002) (holding that a court-approved agreement in which the father paid child support exceeding the required Guideline amount was merged into the final decree of divorce, lost its contractual nature, and was subject to modification by the trial court).

We conclude that any agreement between the parents regarding the payment of child support of a minor child is within the legal obligation to support the minor child and, therefore, is subject to court modification once the agreement is merged into a divorce decree. In the present case, the 21% provision in the MDA related to the payment of child support for the parties' minor child during the child's minority and, therefore, was within Mr. Kesser's legal obligation to support the minor child. When the trial court approved the agreement and incorporated the MDA into the final decree of divorce, the 21% provision merged into the divorce decree, lost its contractual nature, and became subject to modification by the trial court.

### C. Modification of Child Support Payable Pursuant to the 21% Provision

We have determined that the second component of the "Basic" child support, the 21% provision, is enforceable and merges into the divorce decree. As such, it is subject to modification. Mr. Kesser sought a downward modification of the 21% provision based upon 1) his loss of employment in 1997 and his unemployment for approximately one year until March 1998; 2) his visitation with the child; 3) a change in the law since the final decree of divorce was entered; and 4) his adoption of two children at the time of trial and an additional child following trial. The trial court modified the 21% provision only by ordering that the child support computed on the severance pay be placed in a trust fund rather than paid directly to Ms. Kesser.

We review the trial court's findings of fact de novo upon the record accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(b); Kaplan v. Bugalla, 188 S.W.3d 632, 635 (Tenn. 2006). We review the trial court's conclusions of law de novo, with no presumption of correctness afforded to the decisions of the courts below. Kaplan, 188 S.W.3d at 635. We conclude that neither Mr. Kesser's loss of employment, his visitation with the child, nor a change in the law are proper bases for modification of the 21% provision. We hold, however, that Mr. Kesser's three additional children must be considered in awarding support based upon the 21% provision and that the Guidelines in effect at the time of the hearing must be applied to the trust fund that was created.

*Loss of Employment, Visitation, Change in the Law*

We conclude that Mr. Kesser is not entitled to a downward deviation of the 21% provision as a result of his loss of employment in 1997 and his unemployment until March 1998. The 21% provision is not applicable to Mr. Kesser's base salary or to any increases or decreases in his base salary.[4] Mr. Kesser was obligated to pay child support under the 21% provision only when he received "bonuses or other income as defined by the Tennessee Child Support Guidelines." If he did not receive such income, he was not obligated to pay child support under the 21% provision. Accordingly, Mr. Kesser's loss of employment and his period of unemployment do not constitute changed circumstances justifying a downward modification of child support due pursuant to the 21% provision.

Furthermore, Mr. Kesser is not entitled to a downward modification of his child support obligation under the 21% provision due to his visitation time with the parties' child. The Guidelines provide for a deviation where physical custody of the child "is more equally divided between the parties than occurs in a situation where one party has an average amount of overnight visitation." Tenn. Comp. R. & Regs., ch. 1240-2-4-.04(2)(b) (1997). Mr. Kesser's visitation time with the parties' child is greater than the visitation time contemplated under the Guidelines. See Tenn. Comp. R. & Regs., ch. 1240-2-4-.02(6) (1994), -.04(1)(b) (1997). The parties, however, agreed to this visitation schedule in the MDA. Accordingly, circumstances regarding visitation have not changed as to warrant modification of the 21% provision.

Similarly, a change in the law, standing alone, is not a change in circumstances that would justify the modification of an MDA. See, e.g., Tronco v. Crosley, 827 S.W.2d 802, 803 (Tenn. Ct. App. 1991) (holding that the enactment of the statute establishing the use of the Guidelines does not constitute a substantial and material change in circumstances justifying the modification of an

---

[4] The Court of Appeals held that the trial court erred in including within the award of child support any amounts attributable to increases in Mr. Kesser's base salary pursuant to the 21% provision. We agree. On remand, the trial court should identify any such amounts and deduct them from the final award of child support pursuant to the 21% provision.

existing child support order). When a change in circumstances is shown, however, the Guidelines and the child support statute in effect at the time of the hearing should be applied.[5]

*Trust Fund*

At the time of the modification hearing, Tennessee Code Annotated section 36-5-101(e)(1)(B) provided that if the obligee's monthly net income exceeded $10,000.00, the custodial parent must prove by a preponderance of the evidence that the additional child support is reasonably necessary to provide for the minor child's needs.[6] The trial court applied this statute to the fixed provision and made appropriate findings of fact in determining that an additional $959.05 per month should be paid directly to Ms. Kesser due to the child's enrollment in a private school.

The trial court also modified the 21% provision by ordering that the child support due from Mr. Kesser's severance pay be placed in a trust rather than be paid directly to Ms. Kesser. The Guidelines in effect at the time of both the final decree of divorce and the modification hearing permitted the establishment of such a trust. See Tenn. Comp. R. & Regs., ch. 1240-2-4-.03 (1997), -.04(3) (1994); Nash v. Mulle, 846 S.W.2d 803, 806 (Tenn. 1993). The trial court, however, ordered the creation of the trust without first determining whether Ms. Kesser proved by a preponderance of the evidence that the additional child support is reasonably necessary to provide for the needs of the child. See Tenn. Code Ann. § 36-5-101(e)(1)(B) (Supp. 2001). Accordingly, we remand the case to the trial court for such findings.

*Adoption of Additional Children*

Finally, the record indicates that Mr. Kesser had adopted two children prior to the modification hearing and was in the process of adopting a third child when the trial court rendered its final judgment. Although the trial court considered the two children adopted prior to the modification hearing in calculating child support pursuant to the fixed amount provision of the MDA, the trial court made no findings regarding the effect of the two adoptions on the child support obligation in modifying the 21% provision. Accordingly, we remand the case to the trial court for such findings.[7] See Tenn. Code Ann. § 36-5-101(e)(4) (Supp. 2003). On remand, the trial court also

---

[5] The Court of Appeals has reached the same conclusion in unpublished opinions. See, e.g., Redmond v. Hunt, No. W2004-00217-COA-R3-JV, 2004 WL 2848385, at *4 (Tenn. Ct. App. Dec. 10, 2004) (holding that the trial court properly applied the Guidelines in effect at the time of the modification hearing).

[6] The Guidelines were changed to conform to Tennessee Code Annotated section 36-5-101(e)(1)(B) (Supp. 2003) by amendment filed September 29, 2003, and effective December 13, 2003. See Tenn. Comp. R. & Regs., ch. 1240-2-4-.04(3) (2003).

[7] We recognize that after the modification hearing, the Guidelines were amended effective December 13, 2003, providing that the adoption of additional children alone does not serve as a basis for modification but should be considered once the trial court determines that modification is warranted. See Tenn. Comp. R. & Regs., ch. 1240-2-4-.03(4)(d)5(i) (2003). In the present case, however, the trial court determined that the 21% provision should

(continued...)

should entertain any petition filed by Mr. Kesser seeking a modification of his child support obligation under both the fixed amount provision and the 21% provision based upon his incurring legal obligation to support his third adopted child.[8]

### D. Capital Gains

"Gross income" as defined in the Guidelines in effect at the time of both the parties' divorce and the modification hearing included "capital gains." Tenn. Comp. R. & Regs., ch. 1240-2-4-.03(3)(a) (1994). Therefore, Mr. Kesser is required to pay child support pursuant to the 21% provision on any "capital gains" that he has received.

Mr. Kesser contends that he is obligated to pay child support on capital gains only to the extent that they exceed capital losses, which is the same method employed in the Internal Revenue Code in determining taxable income. The term "capital gains" as used in the Guidelines is analogous to the term used in the Internal Revenue Code. Alexander v. Alexander, 34 S.W.3d 456, 462-63 (Tenn. Ct. App. 2000). While the Internal Revenue Code provides for the subtraction of capital losses from capital gains in some instances, the result is defined specifically in the Code as "net short-term capital gain," "net long-term capital gain," or "net capital gain." 26 U.S.C. § 1222(5), (7), (11) (2000). The plain language of the Guidelines, however, refers only to "capital gains" and does not refer to capital losses or a "net" amount of capital gains. See Tenn. Comp. R. & Regs., ch. 1240-2-4-.03(3)(a) (1999); see also City of Cookeville v. Humphrey, 126 S.W.3d 897, 902 (Tenn. 2004) (noting that where the language of a statute is clear and unambiguous, we must apply the statute in accordance with its plain language). Accordingly, we conclude that Mr. Kesser's capital losses should not be considered in determining child support due from his capital gains.[9]

### CONCLUSION

We conclude that 1) the 21% provision is legally enforceable; 2) the 21% provision falls within Mr. Kesser's legal obligation to support his child and, therefore, became subject to modification once it merged into the divorce degree; and 3) Mr. Kesser's net capital losses should not be considered in determining child support due from his capital gains. Although the trial court was within its discretion in creating a trust consisting of the proceeds of 21% of Mr. Kesser's severance pay, it failed to make findings required under Tennessee Code Annotated 36-5-101(e).

---

[7](...continued)
be modified on a basis separate from Mr. Kesser's adoption of additional children.

[8] We affirm the judgment of the Court of Appeals as to the remaining issues relating to the fixed amount provision.

[9] We agree with the Court of Appeals' conclusion that Mr. Kesser is not required to pay child support pursuant to the 21% provision on capital gains derived from the sale of assets awarded to him under the MDA. See Alexander, 34 S.W.3d at 464. On remand, the trial court must deduct any amounts representing child support from capital gains derived from the sale of property awarded to Mr. Kesser in the MDA.

Accordingly, the case is remanded to the trial court for this purpose and for further findings consistent with this opinion.

Costs of appeal are taxed equally to the appellant, Peter Hale Kesser, and the appellee, Mary Warren Kesser, and their sureties, for which execution may issue if necessary.

 

 

_____
JANICE M. HOLDER, JUSTICE