IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Submitted on Briefs June 11, 2008

**RHONDA LYNN G. (PICKLE) WHEELER**
**v.**
**JACKIE DAVID PICKLE**

**Appeal from the General Sessions Court for McNairy County**
**No. 3488     Van D. McMahan, Judge**

_____

**No. W2007-02731-COA-R3-CV - Filed December 17, 2008**

_____

This appeal involves child support in the form of funds to be deposited into a savings account. The parties had two children and divorced. The mother was the primary residential parent. The father was ordered to pay some child support, below the guideline amount, directly to the mother. In addition, he was ordered to open and fund a savings account to be used to pay the children's uninsured medical expenses. The order also stated that, once the children reached majority, any amounts left in the savings account were to be disbursed to the children. The father never opened or funded the savings account. The mother sought an award for the amounts that were supposed to have been deposited in the savings account. The trial court granted such an award in favor of the mother, and the father appeals. He argues that the amount that he was ordered to deposit into a savings account for uninsured medical expenses could not have been considered child support because the unused funds were to be disbursed to the children after they reached majority. He also argues that child support payments he made after the children reached majority should have been credited against any arrearage related to the savings account. We affirm, finding that the amounts ordered to have been placed in the savings account were part of the father's child support obligation, and that the trial court did not err in declining to grant the father credit against the award based on child support paid after the children reached majority.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

G. Michael Casey, Jackson, Tennessee, for the Defendant/Appellant Jackie David Pickle

Terry L. Wood, Corinth, Mississippi, for the Plaintiff/Appellee Rhonda Lynn G. (Pickle) Wheeler

**OPINION**

Plaintiff/Appellee Rhonda Lynn G. (Pickle) Wheeler ("Mother") and Defendant/Appellant Jackie David Pickle ("Father") were married in Selmer, McNairy County, Tennessee on April 9, 1977. They had two children, born November 22, 1985 and April 27, 1988. In 1992, Mother filed a complaint for divorce. The parties entered into a marital dissolution agreement that provided for equal parenting time and required Father to pay $200 per month in child support. The marital dissolution agreement was confirmed by the General Sessions Court of McNairy County, and the parties were declared divorced.

Soon thereafter, Mother filed a petition to change the residential parenting arrangement. After mediation, the parties agreed that Mother would be the children's primary residential parent and that Father would have alternate residential parenting time.

In February 1999, Mother filed a motion seeking an increase in child support. On October 14, 1999, an agreed order was entered on Mother's motion. The General Sessions order stated in part:

> Effective November 1, 1999, [Father] shall not be required to keep medical insurance on the children of the parties because [Mother] has major medical insurance on the children. Instead, [Father] shall open a savings account and deposit $150.00 into said savings account each month until both children have been emancipated or otherwise reach the age of majority so that child support obligations are not legally required. No monies shall be withdrawn from said account except to pay for medical bills of either of the children during their minority, which are not covered by insurance.
> . . .
> At the point in time when <u>both</u> children have reached the age of majority and any unpaid medical bills of the children have been satisfied, then [Father] shall disburse the complete balance of this account equally between the children of the parties.

Thus, the order required Father to make payments each month into a savings account to cover the children's uninsured medical expenses. At the children's majority, any leftover monies in the account would be distributed to them. In addition, the trial court increased Father's child support obligation to $450 per month, but added, "By agreement of the parties, this amount is less than the guidelines dictated by the Department of Children's Services." The savings account apparently was never set up or funded.

The parties' youngest child reached the age of majority on April 27, 2006 and graduated from high school in May 2006. On May 1, 2006, Father filed a motion to terminate his child support obligation as of May 31, 2006. However, for several months after the youngest child reached majority, Father continued to send Mother $450 per month.

Mother's response to Father's motion admitted that their youngest child had turned eighteen and would soon graduate from high school. She characterized Father's motion as frivolous because his "obligation to pay support automatically terminated and no litigation was necessary." She added, "[Father] has elected, in spite of [Mother's] specific admonition to cease, to send monies in the amount of $450.00 monthly to the [Mother]. The [Mother] has assumed that this is the [Father's] way of offering to assist with the various and sundry expenses of the parties' children . . . ."

Mother's response to Father's motion also included a counterclaim, seeking an award of the amounts that Father had been ordered to place in a savings account for the children's uninsured medical expenses. Mother alleged that Father had previously told her that he did not intend to obey the order. She asserted that there were no outstanding medical bills for the children, and therefore sought a judgment against Father in the amount of $11,850 plus interest. The trial court set a hearing on Father's motion to terminate his child support obligation and Mother's counterclaim for the monies that were ordered to be deposited in a savings account.

At the hearings, it was undisputed that the requirement in the October 14, 1999 order that Father set up and fund the savings account came about as a result of a compromise between Mother and Father. Specifically, Mother agreed to accept monthly child support payments below the amount that otherwise would have been required under the child support guidelines, in return for Father's agreement to set up the savings account to cover uninsured medical expenses. Father maintained, however, that the savings account requirement should have been viewed as a contractual obligation rather than a child support obligation.

At the hearings, Father also argued that he should have been given credit for overpaying his monthly child support obligation. He conceded that he had failed to set up or fund the savings account, but claimed that he paid considerably more in monthly child support than the amount required by the October 14, 1999 order. In his memorandum submitted to the trial court in preparation for the hearings, Father stated, "Assuming that the children incurred no uncovered medical expenses during minority, [Father] had a duty to pay them a total of $11,850.00 when the younger child graduated from high school in May 2006." He alleged that he had "paid some $37,834.00 in post-majority benefits for the children—over three times the amount he agreed to in the October 14, 1999 order."[1]

The General Sessions Court issued its order on October 5, 2007. It first found that Father's child support obligation automatically terminated at the end of May 2006. Next, it rejected Father's contention that he be credited for amounts allegedly paid to support the children after they reached majority. Last, the trial court then awarded Mother a judgment in the amount of $13,272.17, which represented the accumulated amounts that Father was ordered to have deposited in a savings account for the children, plus interest. From this order, Father now appeals.

---

[1] Father refers to the "Defendant's Calculation of Payments" to verify the amount of his alleged overpayment. The appellate record, however, does not include such a "calculation of payments."

On appeal, Father argues that the trial court erred by characterizing his obligation to fund a savings account for the children's uninsured medical expenditures as a child support obligation instead of treating it as a contractual obligation. He also contends that the trial court erred by not giving Father credit for post-majority payments made to Mother and post-majority payments made either to the parties' children or on their behalf.

The trial court's findings of fact are reviewed *de novo* on the record with a presumption that the findings are correct "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d); **Campbell v. Fla. Steel Corp.**, 919 S.W.2d 26, 35 (Tenn. 1996). Conclusions of law are reviewed *de novo* with no presumption of correctness. **Campbell**, 919 S.W.2d at 35.

On appeal, it is undisputed that Father never funded the savings account referred to in the trial court's October 14, 1999 order. Because there are no factual issues, Father's argument that the trial court mischaracterized his obligation presents a legal issue. Father argues that any agreement between parents to extend child support beyond a child's minority is governed by rules of contract interpretation rather than our child support guidelines. He notes that the October 14, 1999 order contemplated disbursement to the children of any unused proceeds in the savings account after the children reached majority—that is, after Father's duty of support had expired. From this, Father argues that, as to the savings account, the order created a contractual obligation, not a child support obligation.[2]

Father cites **Kesser v. Kesser**, 201 S.W.3d 636 (Tenn. 2006), in which the Tennessee Supreme Court observed, "If the parties agree to extend child support beyond the child's minority, . . . that portion of the agreement is not merged into the final decree of divorce, retains its contractual nature, and is subject to the general rules of contract interpretation." **Id.** at 642 (citing **Penland v. Penland**, 521 S.W.2d 222, 224–25 (Tenn. 1975)). Generally, a parent cannot be ordered by the courts to pay support for a child who has reached majority. **Bryan v. Leach**, 85 S.W.3d 136, 151 (Tenn. Ct. App. 2001) (citations omitted). However, a party to a divorce may choose to obligate himself or herself beyond the support duties imposed by law. **Id.** Such a provision in a marital dissolution agreement retains its contractual nature even if it is incorporated into the final decree of divorce. **Id.** (citations omitted). Based on this authority, Father argues that any agreement to provide for his children after minority cannot be considered a child support obligation because he was under no legal duty to provide such support.

Mother maintains that the savings account was part of Father's child support obligation, even though the order called for the unused proceeds to be paid to the children after the youngest reached majority. She cites **Nash v. Mulle**, 846 S.W.2d 803 (Tenn. 1993), in support of her contention. In

_____

[2]In his brief on appeal, Father omits a statement of the precise relief he is seeking. **See** Tenn. R. App. P. 27(a)(7), (8) (requiring the appellant to include in his argument section the reasons why appellate relief is required, and to state in his conclusion the precise relief sought). He also fails to explain the prejudicial effect of the lower court's alleged error. **See** Tenn. R. App. P. 36(b) (prohibiting an appellate court from setting aside a final judgment unless the alleged error was prejudicial).

*Nash*, the father was ordered to pay child support during his child's minority, with part of the child support deposited into a trust fund established in order to provide for the child's college education. *Id.* at 804. The father argued on appeal that this order was incompatible with Tennessee law because "it unlawfully require[d] post-minority support." *Id.* at 806.

The Tennessee Supreme Court rejected the father's contention. Concluding that the trust fund was not incompatible with holdings from cases such as ***Garey v. Garey***, 482 S.W.2d 133, 135 (Tenn. 1972), the Court stated, "Although child support payments may not extend beyond the child's minority . . ., *the benefits from such payments can*." *Nash*, 846 S.W.2d at 806 (emphasis added). The Court went on to hold that "funds ordered to be accumulated during a child's minority that are in excess of the amount needed to supply basic support may be used to the child's advantage past the age of minority." *Id.*

Although the facts and circumstances in *Nash* are not identical to those in the case at bar, *Nash* is, nevertheless, instructive. As in *Nash*, the funds in this case were to be deposited by Father into the savings account during the children's minority. The fact that unused amounts in the savings account were to be paid to the children after they reached majority does not transform the nature of the funds into something other than child support.

In this case, the trial court did not explicitly find that the monies that Father was required to deposit into the savings account constituted child support. However, even assuming that the trial court implicitly found these amounts to be child support, we find no error in this. Likewise, we find no error in the award to Mother of funds ordered to have been maintained in a savings account for the children.[3]

For his second issue on appeal, Father asserts that he should have received credit for payments made to Mother for the children, or payments made to the children or on their behalf after the children reached majority. He contends that these payments should have been used to offset the amounts awarded to Mother for Father's failure to maintain the savings account. Although Mother does not dispute that Father made some post-majority payments, the record contains no evidence of the amounts paid, or when or to whom they were paid.

Father cites no authority in support of his position, and we have found none. There is nothing to indicate that these payments were made, or received, as payment of Father's arrearage, *i.e.*, the funds that should have been deposited into the savings account pursuant to the October 1999 order. Under these circumstances, we cannot conclude that the trial court erred in declining to credit Father for these amounts.

---

[3] At any rate, despite the parties' agreement that Mother would accept less than the Guideline amount of child support, Father would, nevertheless, be obligated to pay the Guideline amount. ***See Lichtenwalter v. Lichtenwalter***, 229 S.W.3d 690 (Tenn. 2007); ***Lichtenwalter v. Lichtenwalter***, No. M2003-03115-COA-R3-CV, 2006 WL 236945 (Tenn. Ct. App. Jan. 30, 2006).

The decision of the trial court is affirmed. Costs on appeal are to be taxed to the Appellant, Jackie David Pickle, and his surety, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE