IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 11, 2018 Session

## CHARLES MICHAEL VANCE, II v. ANGELA MICHELLE TAYLOR VANCE

**Appeal from the Circuit Court for Davidson County**
**No. 08D-2882      Phillip R. Robinson, Judge**



### No. M2017-00622-COA-R3-CV

The issues on appeal involve the proper number of days upon which to base the calculation of child support, the propriety of the award of extraordinary educational expenses under the parties' permanent parenting plan, and attorney's fees. Having determined that the trial court erred in its determination of child support and extraordinary educational expenses, we affirm in part, and vacate and remand in part.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Vacated and Remanded in Part**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and RICHARD H. DINKINS, J., joined.

Pamela A. Taylor, Gregory D. Smith, and Brenton H. Lankford, Nashville, Tennessee, for the appellant, Angela Michelle Taylor Vance.

Michael K. Parsley and D. Scott Parsley, Nashville, Tennessee, for the appellee, Charles Michael Vance, II.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

Charles Michael Vance, II, ("Father") and Angela Michelle Taylor Vance ("Mother") are the parents of Charles Michael ("Michael"), born in 2003, and Catherine Danielle ("Dani"), born in 2007. On March 4, 2009, Father and Mother were divorced by a final decree incorporating a marital dissolution agreement and permanent parenting plan.

The permanent parenting plan stated that, "Each parent is the primary residential parent during his or her time with the children as they have equal residential time." Father had 182 residential days with Dani and 183 residential days with Michael; Mother had 182 residential days with Michael and 183 residential days with Dani. The day-to-day schedule provided for the children to be with one parent for a week and then switch to be with the other parent, with a mid-week overnight visit with the alternate parent. Holidays were equally divided; the parenting plan provided that, "Michael shall spend every President's Day with the Father and Dani shall spend every President's Day with the Mother." Vacations were divided equally between the two parents.

All major decisions were to be joint. However, the plan stated that, "[i]n the event the parents cannot agree, then Father shall [have] authority to make the final decision." With respect to schooling, the permanent parenting plan includes the following provision:

> The parties acknowledge that their oldest child, Michael, is currently attending kindergarten at David Lipscomb Elementary, and that for continuity and stability purposes following the divorce, they intend for him to remain at David Lipscomb Elementary through the end of first grade, which is the 2009-2010 academic year. The parties agree that commencing April 1, 2009, and through the end of the 2009-2010 academic year, they shall each pay one-half (50%) of Michael's private school costs, including, but not limited to, tuition, fees, books, lunches and other school-required expenses. However, the parties acknowledge that their agreement for Michael to attend David Lipscomb Elementary through the end of his first grade year shall in no way be used by either party to establish a precedent or standard for either child to attend David Lipscomb Elementary or any other private school in the future or what percentage the parents would share, nor shall it be used by either party to attempt to establish a precedent in any argument to the Court. In the event either child attends private school beyond Michael's first grade year, it shall only be by mutual agreement of the parties for that particular year in question.

Father's gross monthly income at the time of the divorce was $5,589. Mother's gross monthly income was $12,500. Mother was ordered to pay Father child support in the amount of $897 per month.

On June 4, 2013, Father filed the petition for modification at issue in this appeal. Father asked that the parties' parenting time be modified as described in the petition (around vacations and holidays). (Father eventually dropped this part of the petition.) He also requested an increase in Mother's child support obligation based upon an increase in her earnings and asked the court to require Mother to share pro rata in extraordinary educational expenses. Father petitioned the court to make these changes retroactive to the filing of the petition.

The case was heard on January 25, 2017, and the court heard testimony from Mother and Father. In an order entered on February 21, 2017, the trial court found that Mother was the primary residential parent of Dani, Father was the primary residential parent of Michael, and that there was "a significant variance to justify review and modification of the Mother's child support obligation which the Court finds to be $2,100 per month." On the issue of extraordinary educational expenses, the trial court found the parties' provision requiring mutual agreement on private school to carry "no force and effect" and determined that the issue of private schooling was "clearly under the control of the Court." The trial court ruled that the parties "shall be responsible for their *pro rata* share of the children's tuition, books, fees and other reasonable and necessary expenses associated with private elementary and secondary schooling." The trial court ordered that the increase in child support and the award of extraordinary educational expenses would be retroactive to January 1, 2015. This decision resulted in a judgment for retroactive child support in the amount of $31,278 and for tuition arrears in the amount of $57,146. The court awarded Father his reasonable attorney fees.

*Issues on Appeal*

Mother raises the following issues on appeal:

1. Whether the trial court erred in setting child support based on 183 and 182 days, respectively, and not on 182.5 days.
2. Whether the trial court erred in deviating from the child support guidelines based on extraordinary educational expenses.
3. Whether the trial court erred in retroactively applying the deviation for extraordinary educational expenses.
4. Whether the trial court erred in awarding Father his attorney fees incurred in prosecuting his petition.
5. Whether the trial court erred in not awarding Mother her attorney fees incurred in defending Father's petition.
6. Whether Mother should be awarded her attorney fees on appeal.

Father asserts that he should be awarded his attorney fees on appeal.

ANALYSIS

(1) Child Support

Mother argues that the trial court erred in its calculation of child support.[1] In particular, Mother asserts that the trial court erred in using 183 and 182 days for each

---

[1] Mother does not dispute the trial court's finding of a significant variance justifying a modification of child support.

child in calculating child support instead of 182.5 days because the parties spent an equal amount of time with each child.

We review the trial court's findings of fact de novo with a presumption of correctness unless the preponderance of the evidence is otherwise. TENN. R. APP. P. 13(d); *Milam v. Milam*, No. M2011-00715-COA-R3-CV, 2012 WL 1799029, at *3 (Tenn. Ct. App. May 17, 2012). With respect to the calculation of child support, the following principles apply:

> Setting child support is a discretionary matter. *See State ex rel. Coleman v. Clay*, 805 S.W.2d at 755. Accordingly, we review child support decisions using the deferential "abuse of discretion" standard of review. This standard requires us to consider (1) whether the decision has a sufficient evidentiary foundation, (2) whether the court correctly identified and properly applied the appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives. *See BIF v. Service Constr. Co.*, No. 87-136-II, 1988 WL 72409, at *2 (Tenn. Ct. App. July 13, 1988) (No Tenn. R. App. P. 11 application filed). While we will set aside a discretionary decision if it rests on an inadequate evidentiary foundation or if it is contrary to the governing law, we will not substitute our judgment for that of the trial court merely because we might have chosen another alternative.

*State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000).

The child support calculation depends, in part, upon the number of days each child spends with each parent. The child support guidelines contemplate that the number of days a child spends with each parent "will be the actual number of days spent in the care of each parent, as opposed to the number of days established under the permanent parenting plan." *Hibbens v. Rue*, No. E2014-00829-COA-R3-CV, 2015 WL 3643421, at *6 (Tenn. Ct. App. June 12, 2015). The child support worksheet attached to the parties' original parenting plan showed the number of days each child was to spend with each parent was 182.5. Mother argues that the same should be true now. Father disagrees, arguing that the parties do not actually spend equal time with the children. He asserts that the child support worksheet should be as the trial court ruled: Father has 183 days with Michael and 182 days with Dani; and Mother has 183 days with Dani and 182 days with Michael. Thus, the issue on appeal is a factual dispute.

Mother and Father testified they followed the schedule described in the permanent parenting plan with one exception, namely the provision whereby they were each to have one of the children on President's Day. Instead, whichever parent had the children under the normal day-to-day schedule would have them on President's Day. Mother testified on cross-examination as follows:

- 4 -

A. The Parenting Plan states that we split the children on that day, no matter who they go to in the rotation.

Q. Okay. That's right.

A. That Michael stays with Charles and Dani stays with me.

Q. But you agree, don't you, that from 2011 forward, you haven't exercised any of your President's Day at all; they have always stayed with Mr. Vance?

A. President's Day hasn't always fallen on Mr. Vance's week.

Q. Do you agree or disagree, ma'am, that from 2011 forward, you have not exercised that President's Day holiday with the children?

A. I would have to check a calendar. I know that we have never split the children on President's Day. And I would be shocked if, in that number of years, that one of those days did not fall on my time where I had Michael instead of Charles having Michael on that day.

Q. You're not sure about that, are you, ma'am.

A. I am not sure about that.

Q. Did you bring a calendar?

A. I have a calendar on my phone, yes.

. . . .

WITNESS: Both of them would have been with Charles. In 2015, on February 16th, they would have both been with their father.

BY MR. PARSLEY:

Q. Okay. So '14 is with dad and '15 is with dad, right?

A. Well, '16 with dad and '15 with dad.

Q. Well, wouldn't you have gotten one of those years?

THE COURT: Let's let her look.

MR. PARSLEY: I'm sorry, Judge.

WITNESS: So this calendar is from my work, employment, so from '14 backward, I am not going to have my children on my phone.

Father's testimony on the issue of the President's Day was as follows:

Q. Did you have both the children President's Day in 2015?

A. I did.

Q. Did you have both of the children for President's Day in 2016?

A. I did.

Q. In fact, tell His Honor what years you've had both children for President's Day.

A. Since 2011.

Q. All right, sir.

THE COURT: Ever since 2011?

WITNESS: Yes, sir, both. She has not exercised it since 2011.

BY MR. PARSLEY:
Q. Each year, both children, correct?
A. Correct.
Q. So, really, if we added—you could add another day on for each child and take one off for her, couldn't you?
A. Yes, sir.

In its order, the trial court made the following findings:

[A] review of the parenting schedule reflects an equal division of the parenting time <u>except</u> for the President's Day holiday when each parent was to exercise parenting time with the child with whom they had been awarded 183 days. This specific parenting schedule is supportive of the parties' intent that each would be designated the Primary Residential Parent for one of the children. Further, the Father testified that since the divorce of the parties, he had always exercised the President's Day holiday with his minor son. The Mother reviewed her calendar and acknowledged that for at least the last two years, the Father had the parties' minor son on the President's Day holiday although she insists that the Father in reality had both children on the 2015 and 2016 President's Day holiday. Her calendar did not extend past 2015, and she had no recollection of how the President's Day holiday had been exercised prior to 2015. . . . Where the Parenting Plan specifically sets forth each parent's days of parenting time with an accompanying schedule supportive of the specified days, and one parent strictly follows the schedule and the other parent chooses not to, the failure of the delinquent parent in exercising her parenting time should not be the basis for a modification of child support.

According to the evidence presented at trial, the amount of the child support award would vary depending upon the number of days of parenting time. The trial court awarded Father $2,100 a month in child support. We have concluded, however, that the trial court erred in awarding this amount. The parties agree that the parenting time is equal with the exception of President's Day. In its order, the trial court implicitly found that Father exercised parenting time with Dani every President's Day and that Mother did not, giving Father another day of parenting time with Dani. Thus, Father would have 183 days of parenting time with Dani and Mother would have 182.

We conclude that the trial court erred in the amount of the child support award. We remand the matter to the trial court for recalculation of the award.

(2) Extraordinary Educational Expenses

Mother argues that the trial court erred in deviating from the child support guidelines based upon extraordinary educational expenses. In particular, Mother asserts that the trial court erred in failing to enforce the parties' agreement to require mutual agreement of the parties before sending either of the children to private school.

Mother testified that she was aware that the children were attending private school but that she never agreed to their attendance there. When she filed her May 19, 2014 answer to Father's original petition to modify, however, Mother was more straightforward. Mother stated:

> The language of the Parenting Plan is very clear on this. Father is the one who wanted the children to attend private school. *Mother has agreed for the children to continue in private school as Father has requested.* However, she has at all times made it clear that she will not commit herself to pay for private school. Father has not alleged in [sic] change in circumstance that would necessitate modifying this provision of the Parenting Plan.

(Emphasis added). Based upon Mother's answer, we conclude that she, in fact, agreed for the children to attend private school through the 2013-2014 school year and, in accordance with the trial court's findings, is required to pay her pro rata share of the tuition and associated costs.

As to the subsequent years, the evidence is that Mother did not agree for the children to attend private school. Tennessee law encourages divorcing parties to resolve by agreement their differences on issues including child support and will enforce such agreements, although certain portions remain subject to modification by the courts. *See Penland v. Penland*, 521 S.W.2d 222, 224 (Tenn. 1975). "When the husband and wife contract with respect to the legal duty of child support, upon approval of that contract, the agreement of the parties becomes merged into the decree and loses its contractual nature." *Id.* The child support provision loses its contractual nature because of the continuing statutory power of the Court to modify child support. *Id*. Thus, "any agreement between the parents regarding the payment of child support of a minor child is within the legal obligation to support the minor child and, therefore, is subject to court modification once the agreement is merged into a divorce decree." *Kesser v. Kesser*, 201 S.W.3d 636, 643 (Tenn. 2006).

The child support guidelines govern the amount of child support awarded. *Jones v. Jones*, 930 S.W.2d 541, 544 (Tenn. 1996). The trial court has the authority to deviate

from the child support guidelines, but it must do so in accordance with the requirements of the guidelines. TENN. COMP. R. & REGS. 1240-02-04-.07(1)(b).[2]

> The Tennessee Child Support Guidelines specifically address educational expenses as a deviation from the standard child support amounts. The child support provisions under the old guidelines stated that "[e]xtraordinary educational expenses . . . *shall* be added to the percentage calculated in the above rule [setting out the percentage of net income to be paid as child support]." *Barnett v. Barnett*, 27 S.W.3d 904, 907 (Tenn. 2000) (emphasis added). However, "[i]n 2005 the child support guidelines were revised to provide that additional support for extraordinary educational expenses should be calculated separately and 'may' be added to the basic support award." *Kaplan v. Bugalla*, 188 S.W.3d 632, 638 n.9 (Tenn. 2006). This Court has previously determined that the change in wording under the Guidelines from "shall" to "may" grants the trial court discretion in determining payment of private school tuition. *Johnson v. Johnson*, No. M2008-00236-COA-R3-CV, 2009 WL 890893, at *10 (Tenn. Ct. App. Apr. 2, 2009).

*Martin v. Martin*, No. W2014-01007-COA-R3-CV, 2015 WL 2400583, at *6 (Tenn. Ct. App. May 20, 2015). The child support guidelines provide:

> (i) Extraordinary educational expenses may be added to the presumptive child support as a deviation. Extraordinary education expenses include, but are not limited to, tuition, room and board, lab fees, books, fees, and other reasonable and necessary expenses associated with special needs education or private elementary and/or secondary schooling that are appropriate to the parents' financial abilities and to the lifestyle of the child if the parents and child were living together.

> (ii) In determining the amount of deviation for extraordinary educational expenses, scholarships, grants, stipends, and other cost-reducing programs received by or on behalf of the child shall be considered.

---

[2] Tenn. Comp. R. & Regs 1240-02-04-.07(1)(b) states:

> The tribunal may order as a deviation an amount of support different from the amount of the presumptive child support order if the deviation complies with the requirements of this paragraph (1) and with this chapter. The amount or method of such deviation is within the discretion of the tribunal provided, however, the tribunal must state in its order the basis for the deviation and the amount the child support order would have been without the deviation. In deviating from the Guidelines, primary consideration must be given to the best interest of the child for whom support under these Guidelines is being determined.

- 8 -

(iii) If a deviation is allowed for extraordinary educational expenses, a monthly average of these expenses shall be based on evidence of prior or anticipated expenses and entered on the Worksheet in the deviation section.

TENN. COMP. R. & REGS. 1240-02-04-.07(2)(d)(1). Furthermore, the Guidelines establish certain requirements for deviating from the presumptive child support amount. TENN. COMP. R. & REGS. 1240-02-04-.07(1)(c). The Guidelines also provide that these expenses should be considered on a case-by-case basis and that the courts should also consider whether the private elementary or secondary schooling is "appropriate to the parents' financial abilities and to the lifestyle of the child if the parents and the child were living together." TENN. COMP. R. & REGS. 1240-02-04-.07(2)(d) & (d)(1)(i).

It is clear from the guidelines that extraordinary educational expenses, such as private school costs, are a part of child support, even though separately calculated. TENN. COMP. R. & REGS. 1240-02-04-.07(2)(d)(1). The agreement made by the Vances merges into the decree. *Penland*, 521 S.W.2d at 224. Thus, the Vances' provision "regarding the payment of child support . . . is subject to court modification. . . ." *Kesser*, 201 S.W.3d at 643. The use of the word "may" in TENN. COMP. R. & REGS. 1240-02-04-.07(2)(d)(1)(i), grants discretion to the court. *Martin*, 2015 WL 2400583, at *6 (citing *Johnson,* 2009 WL 890893, at *10). The court's discretion is, however, limited by the guidelines. Under Tenn. Comp. R. & Regs. 1240-02-04-.07(1)(c), in order to support a deviation for extraordinary educational expenses, the judge must make written findings on:

1. The reasons for the change or deviation from the presumptive amount of child support that would have been paid pursuant to the Guidelines; and

2. The amount of child support that would have been required under the Guidelines if the presumptive amount had not been rebutted; and

3. How, in its determination,

(i) Application of the Guidelines would be unjust or inappropriate in the particular case before the tribunal; and

(ii) The best interests of the child for whom support is being determined will be served by deviation from the presumptive guideline amount.

The guidelines also provide that these expenses should be considered on a case-by-case basis and that the courts should also consider whether the private elementary or secondary schooling is "appropriate to the parents' financial abilities and to the lifestyle of the child if the parents and the child were living together." TENN. COMP. R. & REGS. 1240-02-04-.07(2)(d) & (d)(1)(i).

The Vances' agreement states that both parents must agree for the child to go to private school. Mother admits she has the money to send her children to private school, but she philosophically opposes private schools. She testified that, "I believe that a public school education prepares them better for what they will deal with in society and in life." Mother further testified that Father had never asked her about the children attending private school. She stated that she did not object when Michael continued to attend private school because she "felt like it was very important to Charles and his family that that be where the children continue in school." Mother also admitted that she had the financial ability to contribute to private school tuition. She testified that her daughter did "well" in school, but her son was "not a good student."[3] So, despite her philosophical problems with private schools, she allowed her children to attend one as long as she did not have to pay.

Father testified that he and Mother could financially afford to send the children to private school. He stated that Mother "contributes pro rata to the field trips, after care, and any other extraordinary expenses." She did not pay tuition. He further said that he did not always ask Mother about the children attending private school, but she knew what he was doing. He claimed Mother "just did not want to pay" for private school tuition. He also testified that the children were doing "quite well" in school.

Particularly because these matters "are considered on a case-by-case basis," Tenn. Comp. R. & Regs. 1240-02-04-.07(2)(d), the trial court's findings are important. When evaluating the trial court's opinion in light of the findings required by Tenn. Comp. R. & Regs. 1240–2–4–.07(1)(c), we find that two areas are lacking. The trial court must make written findings on "how . . . [a]pplication of the Guidelines would be unjust or inappropriate in the particular case before the tribunal;" and, "how . . . [t]he best interests of the child for whom support is being determined will be served by deviation from the presumptive guideline amount." TENN. COMP. R. & REGS. 1240-02-04-.07(1)(c)(3)(i) & (ii). The trial court's discussion on these two points is merely conclusory with no reasons given.[4] Absent these findings, we cannot properly review the trial court's decision. We must, therefore, vacate the decision and remand the matter to the trial court for such findings, based on the record or further testimony.

In light of our decision to remand the matter of extraordinary educational expenses, it is unnecessary to address the issues of retroactive application of such fees and the award of attorney's fees. The trial court's decision on these matters is vacated

---

[3] Mother testified that her son got As and Bs and one C. Mother also testified that she had been a straight A student.

[4] Specifically, the trial court said, "The court finds that under the facts and circumstances of this case, the strict application of the guidelines would be unjust or inappropriate. The court further finds that the aforesaid upward deviation is in the best interest of the parties' minor children."

and the issues are remanded for reconsideration in light of further proceedings of the trial court.

CONCLUSION

The judgment of the trial court with respect to extraordinary educational expenses up to and including the 2013-2014 school year is affirmed, and we vacate and remand the remainder of the trial court's judgment regarding extraordinary educational expenses. We vacate and remand the trial court's award of child support for reconsideration consistent with this opinion. We vacate the trial court's decision on the issues of retroactive application of extraordinary educational expenses and the award of attorney's fees. This matter is remanded with costs of appeal assessed equally against the appellant, Angela Michelle Taylor Vance, and the appellee, Charles Michael Vance, II, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE