IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 21, 2013 Session

## TAMMY MILAM v. JAMES MILAM

**Appeal from the Chancery Court for Montgomery County**
**No. MCCHCVDI06323      Michael R. Jones, Judge.**

**No. M2012-01659-COA-R3-CV - Filed September 19, 2013**

Mother appeals from the trial court's post-divorce modification decreasing Father's child support obligation. Finding no error, we affirm. We have also determined that Father is entitled to recover the reasonable and necessary attorney's fees he incurred in this appeal pursuant to Tennessee Code Annotated § 36-5-103(c).

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

Mark R. Olson, Clarksville, Tennessee, for the appellant, Tammy L. Milam.

Mark A. Rassas and Julia P. North, Clarksville, Tennessee, for the appellee, James P. Milam.

## OPINION

This action involves the post-divorce reduction of Father's child support obligation. The parties were divorced in 2007 and have three minor children from the marriage. Mother was designated the primary residential parent in the permanent parenting plan, which was entered on November 13, 2008. Mother was given 247 days of parenting time and Father received 118 days.

Father is a builder and contractor by trade and at the time of divorce, his income was designated as $4,333.33 per month or $52,000 per year. Mother works for a medical supply and intravenous drug company, and at the time of divorce her income was designated as $6,856.13 per month or $82,273.56 per year. By agreement of the parties, Father's child support obligation was set at $1,200 per month, which included a substantial upward deviation.

On January 20, 2011, Father filed a Petition for Modification of the child support obligation seeking to reduce his child support obligation. A trial on his petition was held on November 9, 2011, and December 14, 2011. Father and his employer, James Shelpman, testified regarding Father's employment and financial difficulties. Mr. Shelpman testified that he and another man purchased Farther's construction business when it was in financial difficulty and the two men formed Milam Builders, LLC. He also testified that Father is an employee of the company and the company uses Father's contractor's license to conduct its business. Father and Mr. Shelpman both testified that Father's salary was $1,000 per week, being $52,000 per year, if he were paid regularly, however, both Father and Mr. Shelpman testified that during the months the company was not profitable, Father did not receive his salary. Father also testified that he performed odd jobs outside of his employment with Milam Builders to supplement his income.

Father testified that he was experiencing significant financial problems and his income was insufficient to meet his obligations. He stated he had liquidated personal assets, including real property he received in the divorce, and borrowed money from his mother to pay his bills. Father's mother, Patricia Milam, testified that she had made several loans and provided financial gifts to her son to aid him financially.

At the conclusion of the trial, the court took the matter under advisement. In a Memorandum Opinion entered on June 19, 2012, the trial court found that Father's income for 2011 was $64,000, this sum included his $52,000 annual salary from Milam Builders and imputed income of an additional $12,000. As for Mother, the trial court found that her income for 2011 was $129,636.00, which represented a substantial increase over her 2007 income, which was $82,273.56. The court also found Father was no longer able to pay the $1,200 per month in child support, which was based upon a substantial agreed upon upward deviation. The court also noted there was no evidence to justify such an upward deviation.

After calculating Father's monthly income, which was $5,333.33, and Mother's monthly income, which was $10,803, the trial court calculated the presumptive support obligation on the Child Support Worksheet using the income shares guidelines and found that the presumptive child support obligation of Father was $358 per month. Additionally, because Father testified he was willing to pay $600 per month for child support and an additional $210 per month for the children's health insurance, the trial court awarded an upward deviation to modify and set Father's child support obligation at $600 per month. Realizing the petition to modify support was filed on January 20, 2011, the court instructed the parties to determine if there was an overpayment; the court also reserved all other issues pending a determination of the child support overpayment.

By orders entered on July 16, 2012, and September 7, 2012, the latter of which was to make a correction, the trial court set Father's child support at $600 per month retroactive to the filing of the Petition to modify child support and ordered Father to continue paying the expense for the children's health insurance, which was an additional $210 per month.[1] The trial court also found that Father was entitled to a credit of $15,074.29 for excess support payments remitted during the pendency of the petition to modify. To satisfy this obligation, Father was given a credit of $100 per month; thus reducing his future child support obligation to $500 per month until the overpayment was satisfied. Mother filed a timely appeal.

**ANALYSIS**

Mother identified three issues on appeal. First, she contends the trial court erred by failing to apply the proper standard to a voluntary upward deviation; stated another way, Mother argues that the court erred by not enforcing Father's contractual agreement to pay support of $1,200 per month. Second, Mother argues the trial court erred in failing to impute greater income to Father. Last, Mother argues the court erred in not properly calculating support so as to establish a significant variance.

A.  The Standard of Review of Child Support Orders

Prior to the adoption of the Child Support Guidelines in 1984, the trial court had wide discretion in matters relating to child custody and support, which was guided only by broad equitable principles. *Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005). With the adoption of the Child Support Guidelines, the trial court's discretion was limited and decisions regarding child support must now be made within the strictures of the Child Support Guidelines. *Id.* The amount of support derived from a proper application of the guidelines is the presumptive amount of child support owed, however, the presumptive amount of support is rebuttable. *Id*. Accordingly, the trial court may deviate from the amount of support required by the guidelines, but when it does, the court must make specific written findings regarding how the application of the guidelines would be unjust or inappropriate. *Id*.

Although setting child support is still a discretionary matter, *see State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000), that discretion is bounded on all

---

[1]In the first order, Father's wage assignment was set at $810 per month, which included a child support obligation of $600 plus an additional $210 per month for the children's health insurance. The September 7, 2012 order was entered to modify the assignment to $600 because Father was paying the premiums for the children's health insurance.

sides by the child support guidelines. *Smith v. Darmohray*, No. M2003-00236-COA- R3-JV, 2004 WL 904095, at *4 (Tenn. Ct. App. Apr. 27, 2004) (citing *Butler v. Butler*, 680 S.W.2d 467 (Tenn. Ct. App. 1984)). We review the record de novo with a presumption that the court's factual findings are correct, absent a showing that the evidence preponderates to the contrary. Tenn. R. App. P. 13(d); *see Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000). To the extent the trial court exercises its discretion to set child support, we review such decisions pursuant to the deferential "abuse of discretion" standard. *Spanos*, 189 S.W.3d at 725. "A trial court will be found to have 'abused its discretion' when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *Id.*

### B. Mother's Contractual Agreement Contention

In the 2008 Permanent Parenting Plan that was incorporated into the parties' Final Decree of Divorce, Father agreed to pay $1,200 a month in child support, which included an upward deviation of $733, more than double the presumptive obligation. Had Father not agreed to the upward deviation in 2008, Father's presumptive child support obligation would have been $467 per month, which included an additional expense under Section IV of the worksheet of $210 for health insurance for the children.

As our courts have recognized, "parties are free to agree 'to a child support obligation that exceeds the amount payable directly to an obligee parent under the Guidelines and to a method of calculating child support that differs from the mechanism contemplated by the Guidelines as long as the resulting child support meets or exceeds the amount mandated under the Guidelines.'" *Jones v. Jones*, No. M2009-01512-COA-R3-CV, 2010 WL 2025403, at *4 (Tenn. Ct. App. May 20, 2010) (quoting *Kesser v. Kesser*, 201 S.W.3d 636, 642 (Tenn. 2006)). Agreements memorialized in an MDA or a settlement agreement are generally enforceable as contracts;[2] however, "an agreement between parties 'with respect to,' 'dealing with,' or within 'the scope of' the legal duty to support their children during minority 'loses its contractual nature' when merged into a divorce decree." *Kesser*, 201 S.W.3d at 642 (citing *Penland v. Penland*, 521 S.W.2d 222, 224-25 (Tenn. 1975); *Blackburn v. Blackburn*, 526 S.W.2d 463, 465 (Tenn. 1975)). As such, the child support obligation is subject to modification by the trial court. *Id*. (citing *Penland*, 521 S.W.2d at 224; Tenn. Code Ann. § 36-5-101(a) (Supp. 2003)). Accordingly, Mother's contention that the trial court applied an

---

[2]In *Kesser v. Kesser*, the Tennessee Supreme Court acknowledged that an MDA is a contract "that generally is subject to the rules governing construction of contracts." *Kesser*, 201 S.W.3d at 642. In *Jones v. Jones*, the parties' agreement regarding child support was entered into in an agreed Permanent Parenting Plan Order. *Jones*, 2010 WL 2025403, at *3.

erroneous legal standard in relieving Father of his voluntary agreement in 2008 to pay an upward deviation of $1,200 is without merit.

### C. Modification Based Upon A Significant Variance

Modification of child support is governed by Tennessee Code Annotated § 36-5-101(g)(1). Modification of an existing child support order must be based on a "significant variance, as defined in the child support guidelines . . . between the guidelines and the amount of support currently ordered." *Id.* A "significant variance" is defined as "at least a fifteen percent (15%) change between the amount of the current support order (not including any deviation amount) and the amount of the proposed presumptive support order." Tenn. Comp. R. & Regs. 1240–02–04–.05(2)(c). The procedure for determining whether a significant variance, which is set forth in Tenn. Comp. R. & Regs. 1240–02–04–.05(3), reads as follows:

> To determine if a modification is possible, a child support order shall first be calculated on the Child Support Worksheet using current evidence of the parties' circumstances. . . . If the current child support order was calculated using the income shares guidelines, compare the presumptive child support order amounts in the current and proposed orders. . . . If a significant variance exists between the two amounts, such a variance would justify the modification of a child support order unless, in situations where a downward modification is sought, the obligor is willfully and voluntarily unemployed or underemployed, or except as otherwise restricted by paragraph (5) below or 1240-2-4-.04(10) above.

If a significant variance has been established, Tenn. Comp. R. & Regs. 1240-02-04-.05(5) states:

> [T]he tribunal shall increase or decrease the support order as appropriate in accordance with these Guidelines unless the significant variance only exists due to a previous decision of the tribunal to deviate from the Guidelines and the circumstances that caused the deviation have not changed. If the circumstances that resulted in the deviation have not changed, but there exist other circumstances, such as an increase or decrease in income, that would lead to a significant variance between the amount of the current order, excluding the deviation, and the amount of the proposed order, then the order may be modified.

## D. Evidence of the Parties' Current Circumstances

The trial court found Father's imputed income for 2011 was $64,000, which was based upon a salary of $52,000 and imputed income of $12,000. Mother contends that Father had additional income he did not disclose; however, she presented no persuasive proof of any additional income. The so-called evidence cited in Mother's brief is little more than conclusory allegations, which do not constitute evidence. Moreover, both Father and Mr. Shelpman testified that Father's listed salary was $52,000 a year, but he did not receive all of his salary due to Milam Builders not having sufficient income to pay his full salary. Further, Father testified that he sold his real estate he received in the divorce and borrowed money to pay his bills. Father's mother testified that she had to provide him with financial assistance through loans and gifts. Based upon the foregoing, we have determined that the evidence in the record does not preponderate against the trial court's finding of fact that Father's income for 2011 was $64,000. We have also determined that the evidence in the record does not preponderate against the trial court's finding of fact that Mother's income for 2011 was $129,636.

## E. Child Support Calculations

The trial court used the Child Support Worksheet and the income shares model to determine that Father's current presumptive child support obligation, as set in 2008, was $467 per month, including health insurance as an additional expense under Section IV of the worksheet.[3] After finding Father's imputed monthly income for 2011 was $5,333.33 and Mother's income was $10,803, the trial court used the Child Support Worksheet and the income shares guidelines to determine that Father's proposed presumptive child support obligation would be $358 per month, including health insurance as an additional expense under Section IV of the worksheet.[4] The court also found there was more than a fifteen percent variance in the current and proposed presumptive child support obligation, in fact it was a variance of twenty-three percent. Therefore, the trial court correctly determined that Father was entitled to a modification of his child support.

The trial court then correctly found there was no evidence that the children needed additional support, thus there was no evidence to support an upward deviation unless it was

---

[3]The current presumptive child support order ("PCSO") amount of $467 per month, which was set in 2008, was based upon an adjusted basic child support order ("BCSO") amount of $385 per month plus an additional expense of $82 for Father's share of the children's portion of the health insurance premium.

[4]The proposed PCSO amount of $358 per month was based upon an adjusted BCSO amount of $289 per month plus an additional expense of $69.30 for Father's share of the children's portion of the health insurance premium.

agreed upon. As he had done in 2008, Father agreed to pay child support of up to $600 per month. Therefore, based upon Father's voluntary agreement to an upward deviation, the trial court granted an upward deviation from the presumptive child support obligation of $358, which included the additional expense for health insurance premiums, setting support at $600 per month.

For the foregoing reasons, we find no error with the trial court's decision to modify and set Father's child support obligation at $600 per month, which includes Father's voluntary agreement for an upward deviation. Therefore, we affirm the trial court's order decreasing Father's child support obligation to $600 per month and affording Father a credit of $100 per month until the overpayment is satisfied.

## F. Attorney's Fees on Appeal

Father seeks to recover the attorney's fees he incurred on appeal. Tennessee Code Annotated § 36-5-103(c) provides that a party may recover their reasonable and necessary attorney's fees in cases involving the custody and support of children, including fees incurred on appeal. *Pippin v. Pippin*, 277 S.W.3d 398, 407 (Tenn. Ct. App. 2008). The decision on whether to award attorney's fees remains within the discretion of this court. *Id*.

In 2008, at the time of the parties' divorce, Father agreed to pay child support in an amount substantially greater than his legal obligation. In 2011, Father filed a petition to reduce his support obligation as he was unable to maintain the agreed upon child support. Despite overwhelming evidence that Father was struggling financially, Father once again agreed to pay child support in an amount substantially greater than his legal obligation. Nevertheless, Mother vigorously opposed his petition for modification in the trial court. At trial, Mother presented no persuasive proof of Father having additional income and she presented no proof of a need for maintaining a substantial upward deviation of child support. Thereafter, even when Father agreed to pay substantially more than the presumptive child support obligation again, Mother appealed the trial court's decision to modify his child support obligation. Father prevailed on every issue on appeal.

Based upon the foregoing and the merits, we find that Father is entitled to recover the reasonable and necessary attorney's fees he incurred in this appeal. On remand, the trial court shall determine the amount of Father's reasonable and necessary attorney's fees incurred on appeal and award a judgment against Mother in that amount.

## In Conclusion

The judgment of the trial court is affirmed, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against the appellant, Tammy L. Milam.

_____
FRANK G. CLEMENT, JR., JUDGE