FILED

09/27/2019

Clerk of the
Appellate Courts

# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
June 18, 2019 Session

## ANDREA (MESSER) SCHWAGER v. TIMOTHY SCOTT MESSER

**Appeal from the Circuit Court for Shelby County**
**No. CT-004762-08          Jerry Stokes, Judge**

———————————————————————

### No. W2018-01820-COA-R3-CV

———————————————————————

In this post-divorce action concerning modification of the father's child support obligation, the trial court determined that a significant variance existed between the parties' incomes at the time of the modification hearing and the amount of income the parties earned at the time of the divorce. The trial court modified the father's child support obligation accordingly. The trial court declined, however, to modify the father's child support obligation for any time period prior to the filing of the mother's modification petition in 2015 despite language in the parties' agreement providing that recalculation would take place in 2011. The trial court also ordered that the father would pay 65% of the children's private school tuition and the mother would pay 35%. The trial court further awarded to the mother a portion of her attorney's fees and expert witness fees incurred up to the time of the hearing. The mother has appealed. Discerning no reversible error, we affirm the trial court's judgment in all respects. We decline to award attorney's fees to either party on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and CARMA DENNIS MCGEE, J., joined.

Mitchell D. Moskovitz and Adam N. Cohen, Memphis, Tennessee, for the appellant, Andrea (Messer) Schwager.

Daniel Loyd Taylor and John N. Bean, Memphis, Tennessee, for the appellee, Timothy Scott Messer.

**OPINION**

## I. Factual and Procedural History

The plaintiff, Andrea (Messer) Schwager ("Mother"), filed a complaint for divorce in the Shelby County Circuit Court ("trial court") on September 26, 2008. Mother sought a divorce from her husband, Timothy Scott Messer ("Father"), based on irreconcilable differences or, in the alternative, Father's inappropriate marital conduct. Both parties are practicing dentists. The parties had two children, J.M., who was born in 2002, and A.M., who was born in 2004 ("the Children"). Mother asked the trial court to name her primary residential parent of the Children and award her alimony, child support, and attorney's fees and expenses. Mother also requested that the trial court equitably divide the parties' marital property and debt.

The parties entered into a Marital Dissolution Agreement ("MDA") on February 5, 2009. On February 11, 2009, the trial court entered a final decree of divorce, which incorporated the MDA executed by the parties. The trial court's decree further incorporated an agreed permanent parenting plan ("PPP") for the Children. The PPP provided, *inter alia,* that the parties would make educational and other decisions jointly. The PPP also initially relieved Father from paying his full child support obligation to Mother to account for his responsibility to pay a greater share of his income toward marital debt. The relevant provision from the PPP regarding assessment of child support reads as follows:

> The parties agree that this child support amount is a downward deviation to allow Father two years to pay a greater share of his income toward the marital debt that Father is obligated to pay in the Marital Dissolution Agreement. Upon the conclusion of two years from the date of entry of the Final Decree of Divorce, the parties shall exchange their financial information and proof of income, and the child support shall be recalculated. The parties agree that at that time, Father shall not use the aforementioned justification for a continued deviation.

Accordingly, Father was to pay to Mother $1,000.00 per month in child support, beginning on February 1, 2009. The parties' child support worksheet attached to the PPP demonstrated that Father's actual child support obligation would have been $1,205.00 per month.

Six years later, on May 28, 2015, Mother filed a petition to modify child support, asking the trial court to modify the child support award from February 2011 forward to reflect Father's true child support obligation following the two-year grace period stipulated in the PPP. Mother also sought an increase in Father's child support obligation based on the fact that a 15% variance or more existed between Father's actual obligation

and the initial child support obligation established in the PPP.  Mother further requested that the trial court award her reasonable attorney's fees and expenses.

Following various discovery motions filed by the parties, on September 16, 2015, Mother filed a petition requesting that Father be held in criminal contempt due to his verbal abuse of Mother via text messages.  Mother concomitantly filed an amended petition seeking modification of Father's child support obligation and contribution from Father for the Children's private school tuition.  Mother requested that the trial court require Father to continue paying one-half of the Children's private school tuition and related fees and costs as he had done in previous years.  Mother also sought attorney's fees and expenses related to the motion.  Mother further requested that the trial court refer this matter to the Shelby County Divorce Referee.

Following further discovery motions, on February 10, 2016, Mother filed a motion *in limine* concerning interpretation of the child support provision within the parties' PPP.  Mother renewed her request that the child support calculation contemplated in the PPP apply from 2011 forward.  On March 22, 2016, the trial court entered an order with regard to Mother's motion, determining that the parties' PPP contained an enforceable provision requiring recalculation of child support utilizing income information available in February 2011.  The court stated that the recalculated child support amount "shall apply from February 2011 until further modified by the court."  The court reserved the issue of whether to grant modification of Father's child support obligation in accordance with Mother's May 2015 petition and September 2015 amended petition.  The court noted that if such modification were necessary, the court retained jurisdiction to make such modification retroactive to the date of the petition.  On April 12, 2016, the trial court denied Mother's petition seeking to hold Father in criminal contempt.

On May 19, 2016, the trial court issued an order granting Father the right to proceed with an interlocutory appeal concerning the court's ruling that Father's child support obligation would be recalculated from February 2011 forward.  This Court, however, subsequently denied Father's application for interlocutory appeal on June 14, 2016.

Following the filing of additional discovery and other pretrial motions, the divorce referee conducted a child support hearing spanning seven non-consecutive days in early to mid-2017.  On May 8, 2017, the divorce referee issued the following ruling:

Child support for 2011 would be set at $2236.06 per month.

Child support for 2015 would be set at $2735.44 per month plus 1/2 private school tuition.

- 3 -

Child support for 2016 would be set at $3072.00 per month plus 1/2 private school tuition.

The back child support award from 2011-2016 is $105,046.88 + 5 months in 2017 = $115,406.88 (Father should be given credit for private school paid prior to filing in 2015).

The referee reserved the issue of whether an award of attorney's fees to Mother would be appropriate.

On May 24, 2017, Father filed a motion seeking to have the divorce referee decide all matters referred, including attorney's fees. On July 11, 2017, the trial court granted Father's motion. However, both parties subsequently appealed the divorce referee's May 8, 2017 ruling. On September 5, 2017, the divorce referee entered an addendum to the May 8, 2017 ruling, awarding Mother attorney's fees in the amount of $25,000.00. The parties then filed amended motions appealing the divorce referee's ruling.

On November 15, 2017, the trial court entered an "Order of Recusal of Trial Judge" based on the purported appearance of a conflict of interest. The court's order specified that the court clerk had accordingly transferred the action from Division V to Division VI of the Shelby County Circuit Court.

On May 15, 2018, the trial court, with Judge Jerry Stokes now presiding, entered an order concerning both parties' appeals of the divorce referee's ruling. In the order, the trial court restated the language of the PPP regarding the recalculation of child support in 2011, noting the PPP's silence concerning who must initiate the recalculation process. The court found that after two years had elapsed from entry of the divorce decree, neither party initiated the process of recalculating child support or exchanging financial information. The court also noted that although the parties had agreed to divide the expense of private school tuition for the two minor Children equally, the PPP contained no provision governing such expenses.

As the trial court recognized, the main issue in this matter was the determination of Father's actual income from his dental practice. For purposes of ascertaining Father's income, Mother retained a financial expert, Robert Vance, CPA. Meanwhile, Father relied on the assistance of a different CPA, Kevin Thomas. The trial court noted that while the parties' experts' calculations of Father's income differed considerably, the experts agreed that Father had improperly classified various personal expenses as business expenses. The extent of Father's misclassification of expenses, however, was disputed. For example, the experts disagreed on whether classifying costs related to personal vacations, personal vehicles, and Father's truck-pulling business as expenses of Father's dental practice was proper. The trial court ultimately credited Mr. Vance's opinion as a more accurate reflection of Father's income than Mr. Thomas's opinion.

The court thus determined Father's income for the time period of February 2009 to February 2011 to be approximately $40,000.00 per month. The court also determined that both parties' income had sufficiently increased so as to constitute a significant variance from the amount of their respective incomes at the time of the divorce.

In its order, the trial court further found that Mother had incurred considerable attorney's fees "mainly because Father did not provide accurate and timely records of his income." The court accordingly awarded to Mother $55,000.00 in attorney's fees, as well as $30,000.00 in expert fees for work conducted by Mr. Vance. The trial court denied Father's request to exclude Mr. Vance's testimony and agreed with Mr. Vance's conclusion that Father's truck-pulling hobby failed to constitute a legitimate business expense for tax purposes. The trial court noted that the truck-pulling hobby and any advertisement provided thereby typically occurred outside the jurisdiction of Father's dental practice.

The trial court also denied Father's request for a credit against child support owed for Father's previous, voluntary payment of private school tuition. The trial court modified the parties' PPP to add language covering payments of private school tuition, such that Father would be responsible for 65% of the Children's private school tuition and expenses and Mother would be responsible for 35% of those expenditures.

The trial court ultimately granted Mother's petitions requesting modification of child support. The court found that for the period of February 11, 2011, to May 28, 2015, Father's child support obligation should have been $3,200.00 per month. Furthermore, the court found that Father's child support obligation from May 2015 through May 2018 would also be $3,200.00 per month. The court granted to Mother a judgment for an arrearage against Father in the amount of $79,200.00 for child support owed during the period of May 2015 to May 2018. The court, however, agreed with Father's contention that he should not be held accountable for retroactive child support for the February 2011 to May 2015 period because no petition for modification had been filed during that time.

On June 5, 2018, Mother filed a motion to alter or amend the trial court's May 15, 2018 order, asserting that the issue of whether recalculation of child support back to February 2011 would occur was not properly before the court. Mother contended that the court had previously entered an order on March 22, 2016, determining that child support would be recalculated as of February 2011 by utilizing the income information that would have been available at that time. Father had sought an interlocutory appeal of that order, which was denied. According to Mother, Father had repeatedly maintained that this issue could not be addressed until an appeal could be taken following a final order. Mother requested that the March 22, 2016 ruling granting recalculation of child support back to February 2011 be applied and that the court's May 15, 2018 order be amended to grant an additional amount of arrearage for the period of February 2011 to May 2015.

On June 27, 2018, Father responded to Mother's motion to amend the May 15, 2018 order. Father argued that judicial discretion allowed trial courts to correct interlocutory orders to bring them into compliance with applicable law. Father proceeded to argue that because the March 22, 2016 order to impose retroactive child support ran afoul of applicable precedent and Tennessee Code Annotated § 36-5-101(f)(1), the trial court acted within its discretion to *sua sponte* remove the nonconforming ruling in its later order entered on May 15, 2018.

The trial court entered an order on September 5, 2018, concerning Mother's motion to alter or amend the May 15, 2018 ruling. The trial court defined the dispositive issue as follows:

> [W]hether Mother should be awarded retroactive child support commencing with the filing of her petitions, or whether Mother should be awarded child support based upon the enforcement of the agreement of the parties as stated in the PPP, even if the child support award predates the filing of the petitions.

The trial court agreed with Father that no retroactive child support should be paid for the period between February 2011 and May 2015, the date upon which Mother's first modification petition was filed. In so ruling, the trial court relied upon the language of Tennessee Code Annotated § 36-5-101(f)(1)(A) prohibiting retroactive modification of child support and the Supreme Court's opinion in *Rutledge v. Barrett*, 802 S.W.2d 604, 606 (Tenn. 1991), which recognized such prohibition. The trial court held that Mother's requested enforcement of the parties' PPP to receive child support owed from February 2011 to May 2015 would amount to an impermissible grant of retroactive child support under the statute. The court therefore reaffirmed its award of a judgment to Mother in the amount of $79,200.00 predicated upon the date of filing of Mother's original petition to modify on May 28, 2015. Mother timely appealed.

## II. Issues Presented

Mother presents the following issues for our review, which we have restated slightly:

1.      Whether the trial court erred by declining to enforce the parties' agreement to recalculate child support as of February 2011.

2.      Whether the trial court erred by declining to assess interest on Father's child support arrearage.

3.      Whether the trial court erred by ordering Father to pay only 65% of the Children's private school expenses.

4.      Whether the trial court erred by failing to order Father to pay private school costs retroactive to the filing date of Mother's petition.

5.      Whether the trial court erred by declining to award Mother all of her attorney's fees and expenses and expert witness fees.

6.      Whether this Court should award Mother her reasonable attorney's fees and expenses related to the appeal.

Father presents the following additional issues for our review, which we have also restated slightly:

7.      Whether the trial court erred by awarding to Mother a portion of her attorney's fees and expert witness fees.

8.      Whether this Court should award to Father his reasonable attorney's fees and expenses related to this appeal.

9.      Whether the trial court erred by determining Mr. Vance's expert testimony concerning Father's income and expenses to be credible.

10.     Whether the trial court erred by denying Father's motion to strike Mr. Vance's testimony concerning advertising.

11.     Whether the trial court erred in its determination of Mother's income for child support purposes.

III.  Standard of Review

We review a non-jury case *de novo* upon the record with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). We review questions of law *de novo* with no presumption of correctness. *See Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)); *see also In re Estate of Haskins*, 224 S.W.3d 675, 678 (Tenn. Ct. App. 2006). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011); *Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002).

Determinations regarding child support are reviewed under an abuse of discretion standard. *See Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005). As this Court has explained:

Prior to the adoption of the Child Support Guidelines, trial courts had wide discretion in matters relating to child custody and support. *Hopkins v. Hopkins*, 152 S.W.3d 447, 452 (Tenn. 2004) (Barker, J., dissenting). Their discretion was guided only by broad equitable principles and rules which took into consideration the condition and means of each parent. *Brooks v. Brooks*, 166 Tenn. 255, 257, 61 S.W.2d 654, 654 (1933). However, the adoption of the Child Support Guidelines has limited the courts' discretion substantially, and decisions regarding child support must be made within the strictures of the Child Support Guidelines. *Berryhill v. Rhodes*, 21 S.W.3d 188, 193 (Tenn. 2000); *Jones v. Jones*, 930 S.W.2d 541, 545 (Tenn. 1996); *Smith v. Smith*, 165 S.W.3d 279, 282 (Tenn. Ct. App. 2004).

\* \* \*

Because child support decisions retain an element of discretion, we review them using the deferential "abuse of discretion" standard. This standard is a review-constraining standard of review that calls for less intense appellate review and, therefore, less likelihood that the trial court's decision will be reversed. *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000); *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 222-23 (Tenn. Ct. App. 1999). Appellate courts do not have the latitude to substitute their discretion for that of the trial court. *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). Thus, a trial court's discretionary decision will be upheld as long as it is not clearly unreasonable, *Bogan v. Bogan*, 60 S.W.3d 721, 733 (Tenn. 2001), and reasonable minds can disagree about its correctness. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001); *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000). Discretionary decisions must, however, take the applicable law and the relevant facts into account. *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). Accordingly, a trial court will be found to have "abused its discretion" when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003); *Clinard v. Blackwood*, 46 S.W.3d 177, 182 (Tenn. 2001); *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999).

*Id.* at 725.

Concerning the expert testimony of Mr. Vance, as our Supreme Court has explained, "the admissibility of expert opinion testimony is a matter which largely rests within the sound discretion of the trial court." *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997). The High Court has further explained:

> Discretionary decisions must take the applicable law and the relevant facts into account. *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007). A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence. *State v. Ostein*, 293 S.W.3d 519, 526 (Tenn. 2009); *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d at 358; *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d [22,] 42 [(Tenn. 2005)].

*Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). The trial court's decision to award attorney's fees to Mother is also reviewed pursuant to an abuse of discretion standard. *See Wilder v. Wilder*, 66 S.W.3d 892, 894 (Tenn. Ct. App. 2001).

## IV. Child Support and Related Issues

Both parties have raised issues concerning the trial court's determination of Father's child support obligation and arrearage. Mother argues that the trial court erred by declining to recalculate Father's child support obligation from February 2011 forward as provided by the parties' PPP. Mother also asserts that the trial court erred by failing to assess interest on Father's child support arrearage. In addition, Mother contends that the trial court erred by declining to order Father to bear the entire expense of the Children's private school from the filing date of Mother's petition forward. Father asserts that the trial court incorrectly determined Mother's income for child support purposes. We will address each of these issues in turn.

### A. Recalculation of Child Support

Mother asserts that the trial court erred by declining to recalculate Father's child support obligation from February 2011 forward as provided by the parties' PPP. Although the child support worksheet attached to the February 2009 PPP demonstrated

that Father's child support obligation should be $1,205.00 per month, the PPP provided that Father would pay to Mother $1,000.00 per month in child support. The PPP also stated in pertinent part:

> The parties agree that this child support amount is a downward deviation to allow Father two years to pay a greater share of his income toward the marital debt that Father is obligated to pay in the Marital Dissolution Agreement. Upon the conclusion of two years from the date of entry of the Final Decree of Divorce, the parties shall exchange their financial information and proof of income, and the child support shall be recalculated. The parties agree that at that time, Father shall not use the aforementioned justification for a continued deviation.

Mother did not file a petition seeking an increase in Father's child support obligation until May 28, 2015. Father contends that the trial court properly declined to modify his child support obligation prior to the 2015 filing date of Mother's petition because doing so would constitute an improper retroactive modification of child support. Following our review of this issue and applicable law, we agree with Father.

Concerning the modification of a previously ordered child support obligation, the version of Tennessee Code Annotated § 36-5-101(f)(1) (2014) applicable to this action provided in relevant portion:

> Any order for child support shall be a judgment entitled to be enforced as any other judgment of a court of this state, and shall be entitled to full faith and credit in this state and in any other state. Such judgment shall not be subject to modification as to any time period or any amounts due prior to the date that an action for modification is filed and notice of the action has been mailed to the last known address of the opposing parties.

(Emphasis added.) Our Supreme Court has interpreted this provision as prohibiting the retroactive modification of a child support order, even upon equitable grounds. *See Rutledge v. Barrett*, 802 S.W.2d 604, 606 (Tenn. 1991).

Mother posits that in her 2015 petition, she had actually sought enforcement of the above-referenced recalculation provision of the parties' PPP rather than a modification of Father's child support obligation. According to Mother, because the parties' agreement concerning child support went "beyond the duties imposed by law," the agreement retained its contractual nature and thus could not be subsequently modified by the trial court. In support of her position, Mother relies on this Court's opinion in *Posner v. Posner*, No. 02A01-9710-CV-00249, 1997 WL 796216, at *2 (Tenn. Ct. App. Dec. 30, 1997). We disagree with Mother's position and determine her reliance upon this Court's opinion in *Posner* to be unavailing.

- 10 -

In *Posner*, the parties' marital dissolution agreement provided that the father's child support obligation would be re-evaluated each year following the parties' review of the father's income for the previous year. *Id*. at \*1. The year subsequent to the parties' divorce, the mother filed a petition for contempt as well as a petition to modify, alleging that the father had failed to provide copies of his income tax returns to her. *Id*. The trial court declined to find the father in contempt because the parties' agreement did not require the father to produce copies of his income tax returns. *Id*. Pursuant to the mother's request for a modification, however, the trial court modified the parties' marital dissolution agreement to specifically provide that the father would furnish to the mother his income tax returns each year thereafter "according to the terms of the Agreement" and "in order to effectuate the terms of the Agreement." *Id*.

On appeal in *Posner*, this Court reversed the trial court's order, which had modified the parties' previous agreement by requiring the father to submit copies of his income tax returns. *Id*. at \*3. This Court determined that because the provision in the agreement concerning the annual review of the father's income was not mandated by law, the agreement's provision was not merged into the parties' final decree of divorce and could not be modified by the trial court. *Id*. The *Posner* decision, however, did not address the modification of the father's child support obligation. *Id*.

The question of whether a provision concerning child support for minor children may remain contractual was definitively answered by our Supreme Court in *Kesser v. Kesser*, 201 S.W.3d 636, 642 (Tenn. 2006), *superseded by statute on other grounds as stated in Moore v. Moore,* 254 S.W.3d 357, 360 n.5 (Tenn. 2007), wherein the Court explained that any "agreement between parties 'with respect to,' 'dealing with,' or within 'the scope of' the legal duty to support their children during minority 'loses its contractual nature' when merged into a divorce decree." (quoting *Penland v. Penland*, 521 S.W.2d 222, 224-25 (Tenn. 1975)). The High Court proceeded to explain that "[b]ecause the provision merges into the decree, the child support obligation is subject to modification by the trial court." *Kesser*, 201 S.W.3d at 642.

In *Kesser*, the parties agreed that the father would pay 21% of "all bonuses or other income" to the mother as child support. *Id*. at 639. The father subsequently sought prospective modification of this percentage based upon changes in his financial circumstances. *Id*. at 644. The mother argued that the provision could not be modified because it obligated the father to pay a greater amount of child support than that required by the Tennessee Child Support Guidelines and therefore remained contractual. *Id*. at 643. The Supreme Court determined that the provision was subject to prospective modification, stating:

> We conclude that any agreement between the parents regarding the payment of child support of a minor child is within the legal obligation to

support the minor child and, therefore, is subject to court modification once the agreement is merged into a divorce decree. In the present case, the 21% provision in the MDA related to the payment of child support for the parties' minor child during the child's minority and, therefore, was within [the father's] legal obligation to support the minor child. When the trial court approved the agreement and incorporated the MDA into the final decree of divorce, the 21% provision merged into the divorce decree, lost its contractual nature, and became subject to modification by the trial court.

*Id*. The *Kesser* Court explained that only those agreement provisions related to child support that extended a parent's child support obligation past the age of majority would remain contractual rather than merging into the final decree of divorce. *Id*. at 642-43.

In this action, Mother contends that even if the parties' PPP had been merged into the decree and lost its contractual nature, it would still have to be interpreted as written, and Father's child support obligation would have to be modified as of 2011. Again, we disagree. Because the parties' agreement is "'with respect to,' 'dealing with,' or within 'the scope of' the legal duty to support their children during minority," it did lose its contractual nature when merged into their divorce decree. *Kesser*, 201 S.W.3d at 642 (quoting *Penland v. Penland*, 521 S.W.2d 222, 224-25 (Tenn. 1975)). What this means, however, is that any modification thereof is within the trial court's control and must be accomplished according to Tennessee's statutory scheme. Ergo, the trial court lacks authority to modify Father's child support obligation prior to the time of filing of Mother's petition to modify. *See* Tenn. Code Ann. § 36-5-101(f)(1).

Mother relies upon this Court's opinions in *Anderson v. Harrison*, No. 02A01-9805-GS-00132, 1999 WL 5057, at *1 (Tenn. Ct. App. Jan. 7, 1999), and *Ray v. Ray*, No. 03A01-9111-CH-421, 1992 WL 64778, at *1 (Tenn. Ct. App. Apr. 2, 1992), as further support of her argument that "enforcement" of the PPP does not equate to a retroactive modification of child support. We find these opinions to be inapposite here. In *Anderson*, the father was required by the parties' agreement to pay a "reasonable amount" of child support, and this Court concluded that the trial court's determination of what constituted a reasonable amount for the father to have paid from the date of the decree forward did not equate to a modification of the agreement. *See Anderson*, 1999 WL 5057, at *5. In *Ray*, the father agreed to pay 25% of his annual net income as child support but then failed to do so. *Ray*, 1992 WL 64778, at *1. The trial court determined that no arrearage existed because the mother had accepted the father's reduced payments up to the time of her petition without protest. *Id*. at *3. This Court reversed and remanded for a determination of the proper amount of arrearage owed to the mother, concluding that the decree ordering the father to pay 25% of his net income could not be retroactively modified by the trial court's refusal to enforce it. *Id*. at *5. Therefore, *Anderson* and *Ray* did not involve the modification or "recalculation" of the previously ordered child support obligation; rather, they involved the court's determination of an

appropriate monetary amount of the obligor's monthly obligation based on the decree's language.

In a case factually similar to this action, *Hayes v. Pierret*, No. M2012-00195-COA-R3-CV, 2013 WL 3346847, at *1 (Tenn. Ct. App. June 27, 2013), the parties divorced in 2007, and their parenting plan provided that the father would pay a specific dollar amount of monthly child support to the mother but that the specified amount would be "recalculated" after 2008 when one child began public school and no longer required the care of a nanny. *Id*. Despite the language in the parenting plan, neither party filed a petition to modify the child support amount until 2010. *Id*. at *2. The trial court declined to modify the child support amount beginning in 2008, and this Court affirmed that ruling on appeal. *Id*. at 7.

As the *Hayes* Court explained:

Tennessee Code Annotated § 36-5-101(f)(1) provides that an order for the payment of child support "shall be entitled to be enforced as any other judgment of a court of this state," and "shall not be subject to modification as to any time period or any amounts due prior to the date that an action for modification is filed . . . . " (emphasis added). Thus, "a court has no power to alter a child support award as to any period of time occurring prior to the date on which an obligee spouse files his or her petition." *Alexander v. Alexander*, 34 S.W.3d 456, 460 (Tenn. Ct. App. 2000); *see also Rutledge v. Barrett*, 802 S.W.2d 604, 606 (Tenn. 1991).

Pursuant to the foregoing authority, and specifically Tennessee Code Annotated § 36-5-101(f)(1), because Father did not request a modification of child support until March 29, 2010, when he filed the Motion for Protection of Children and Relief, Father is not entitled to a retroactive modification of child support at anytime prior to March 29, 2010, if then.

*Id*. at *6-7.

Similarly, in this matter, because Mother did not file a petition seeking to modify Father's child support obligation in any respect until 2015, the trial court correctly ruled that Father's child support obligation could not be modified for any time prior to the date of filing of Mother's petition. *See* Tenn. Code Ann. § 36-5-101(f)(1); *Rutledge*, 802 S.W.2d at 606. We therefore conclude that the trial court's ruling on this issue should be affirmed.

B. Interest on Child Support Arrearage

Mother asserts that the trial court abused its discretion in failing to assess prejudgment interest on Father's child support arrearage. Mother concedes that the trial court has discretion concerning whether to award such interest related to a child support arrearage. As this Court has explained:

> Where the amount of an obligation is certain, or can be ascertained by a proper accounting, and the obligation is not disputed on reasonable grounds, courts may allow prejudgment interest, because loss of use of funds by the obligee is the result of the failure to pay an obligation according to its terms, and interest is the usual means of compensating for this loss of use.

*Smith v. Smith*, No. M2000-01094-COA-R3-CV, 2001 WL 459108, at *13 (Tenn. Ct. App. May 2, 2001). Mother argues, however, that the trial court should have assessed interest on Father's child support arrearage due to, *inter alia*, his lack of candor concerning his actual income amount and his attempts to keep his income information from being discovered.

As the *Smith* Court further explained:

> A party seeking to have a lower court's holding overturned on the basis of abuse of discretion undertakes a heavy burden. The abuse of discretion standard is intended to constrain appellate review and implies "less intense appellate review and, therefore, less likelihood of reversal." *BIF v. Service Constr. Co.*, No. 87-136-II, 1988 WL 72409 at *2 (Tenn. Ct. App. July 13, 1988) (no Tenn. R. App. P. 11 application filed). As a general principle, an appellate court will not reverse a decision that lies within the discretion of the trial court unless it affirmatively appears that the lower court's decision was against logic or reasoning and caused injustice to the complaining party. *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). The fact that a decision is discretionary with a trial court necessarily implies that the trial court has a choice of alternatives among a range of acceptable ones; the reviewing court's job is to determine whether the trial court's decision is within the range of acceptable alternatives, given the applicable legal principles and the evidence in the case. "While we will set aside a discretionary decision if it rests on an inadequate evidentiary foundation or if it is contrary to the governing law, we will not substitute our judgment for that of the trial court merely because we might have chosen another alternative." [*State ex rel. Vaughn v.*] *Kaatrude*, 21 S.W.3d [244,] 248 [(Tenn. Ct. App. 2000)].

- 14 -

*Smith*, 2001 WL 459108, at *13.

In the case at bar, the trial court declined to award prejudgment interest on Father's child support arrearage due to "the inordinate length of time before Mother acted on the recalculation provision and/or filed her Petition to Modify." The trial court further relied on the fact that Father had regularly paid his existing child support obligation of $1,000.00 per month as he had previously been ordered to do. Reviewing the trial court's decision to deny prejudgment interest pursuant to the deferential abuse of discretion standard of review, we conclude that the trial court's decision was not against logic or reasoning and was within the range of acceptable alternatives. *See id*. We therefore affirm the trial court's decision declining to award prejudgment interest on Father's child support arrearage.

## C. Allocation of Private School Expenses

Mother also asserts that the trial court erred by declining to order Father to pay 100% of the Children's private school expenses and by failing to order that Father's payment of such expenses would be retroactive to the date of filing of Mother's petition. Mother concedes that the parties' PPP was silent concerning the payment of such expenses because the Children were attending public school at the time of the divorce. Upon the Children's admission to private school in 2012, the parties began dividing the private school costs evenly. According to Mother, following the filing of Mother's petition concerning child support, Father threatened to cease paying a portion of the Children's private school expenses. Mother therefore filed an amended petition in September 2015 to address the payment of private school costs, asking the court to divide those expenses equally between the parties. By the time of trial, however, Mother's counsel requested that Father be ordered to pay all of the private school costs due to Father's considerable income.

In its May 15, 2018 order concerning the parties' appeals of the referee's ruling, the trial court stated as follows with regard to the Children's private school tuition expenses:

As to the issue of private school tuition, the Court finds that the parties will divide equally private school tuition as they have been since enrolling the children in private schools. Further, the Court finds no legal basis exists for granting Father a credit for any voluntary payments for the children's private school tuition against any child support he has paid or will owe. The PPP will be modified and the parties will continue private school tuition in the following manner: Father will pay sixty-five percent (65%) of the private school tuition and related school expenses. Mother will pay thirty-five percent (35%) of private school tuition and related school expenses.

- 15 -

Mother contends that Father should have been ordered to pay 100% of the Children's private school expenses and that such assessment should be retroactive to the filing date of her petition. In contrast, Father argues that the trial court's determination regarding the payment of private school expenses was discretionary and should be affirmed.

The Tennessee Child Support Guidelines allow for the imposition of extraordinary expenses, including educational expenses, in addition to the award of an amount of support commensurate with the Guidelines:

> Extraordinary educational expenses may be added to the presumptive child support as a deviation. Extraordinary educational expenses include, but are not limited to, tuition, room and board, lab fees, books, fees, and other reasonable and necessary expenses associated with special needs education or private elementary and/or secondary schooling that are appropriate to the parents' financial abilities and to the lifestyle of the child if the parents and child were living together.

Tenn. Comp. R. & Regs. 1240-2-4-.07(2)(d)(1)(i). As this Court has further elucidated:

> "[T]he guidelines contemplate private school tuition to be an 'extraordinary educational expense' because the tuition exceeds or departs from the cost of public schooling." *Barnett v. Barnett*, 27 S.W.3d 904, 907 (Tenn. 2000). "[P]ayment of extraordinary educational expenses is a separate component of an obligor's [basic child support obligation]" and a trial court "can order the obligor to pay less than the full amount of a child's (or children's) extraordinary educational expenses, depending upon the proof in a particular case." *Kaplan v. Bugalla*, 188 S.W.3d 632, 636 (Tenn. 2006); *Richardson v. Spanos*, 189 S.W.3d 720, 728-29 (Tenn. Ct. App. 2005) (holding that "this court has consistently approved arrangements requiring the non-custodial parent to pay only a portion of the private school expenses even when the non-custodial parent's income far exceeds that of the primary residential parent").

> The child support provisions under the old guidelines stated that "'[e]xtraordinary educational expenses . . . shall be added to the percentage calculated in the above rule [setting out the percentage of net income to be paid as child support].'" *Kaplan*, 188 S.W.3d at 635 (citing *Barnett*, 27 S.W.3d at 907). However, "[i]n 2005 the child support guidelines were revised to provide that additional support for extraordinary educational expenses should be calculated separately and 'may' be added to the basic support award." *Id*. at 638 n. 9. As stated earlier, the use of the word "may" connotes discretion on the part of the trial court, unless the context

of the statute indicates otherwise. *Williams* [*v. McMinn Cty.*], 352 S.W.2d [430,] 433 [(Tenn. 1961)]. The change in wording under the Guidelines from "shall" to "may" is a clear indication that the imposition of the extraordinary expense of private school tuition is now a discretionary decision.

*Johnson v. Johnson*, No. M2008-00236-COA-R3-CV, 2009 WL 890893, at *10 (Tenn. Ct. App. Apr. 2, 2009).

Following our thorough review of the record, we are unable to conclude that the trial court abused its discretion in its division of the Children's private school costs between the parties or in the prospective nature of its order. The proof demonstrated that each party earned sufficient income to share in payment of such expenses and that the parties had voluntarily been sharing these expenses equally since the Children began attending private school. We reiterate that a court abuses its discretion only when it "causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *See Lee Med., Inc.*, 312 S.W.3d at 524. Because the trial court's determination regarding this issue was not against logic or sound reasoning and was within the range of acceptable alternatives, we conclude that no abuse of discretion occurred. *See Smith*, 2001 WL 459108, at *13. We therefore affirm the trial court's allocation of the Children's private school costs.

### D. Mother's Income

Father contends that the trial court erred in its determination of Mother's gross income for the purpose of calculating child support. The trial court determined Mother's gross monthly income to be $12,250.00. Father asserts that this was erroneous because Mother's annual income in 2016 was $183,000.00, which equates to $15,250.00 per month. Father also asserts that the evidence supported a finding that Mother's salary was fixed by contract, did not fluctuate, and had regularly increased from 2013 to 2016. Father posits that the trial court should have determined Mother's income to be $15,250.00 per month.

As this Court has previously explained:

The fairness of a child support award depends on an accurate determination of both parents' gross income or ability to support. Thus, the Guidelines set forth the method to be used by courts in determining the gross income of each parent. In most situations, the parent's gross income is equivalent to his earning capacity or ability to support.

- 17 -

*Massey v. Casals*, 315 S.W.3d 788, 795 (Tenn. Ct. App. 2009) (internal citations omitted). The trial court's findings of fact are reviewed *de novo* with a presumption of correctness. *Id*. at 793.

The Tennessee Child Support Guidelines provide that all sources of income, such as wages, salaries, and bonuses, are to be included in each parent's gross income calculation. *See* Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a). The Guidelines further provide that "[v]ariable income such as commissions, bonuses, overtime pay, dividends, etc. shall be averaged over a reasonable period of time consistent with the circumstances of the case and added to a parent's fixed salary or wages to determine gross income." *See* Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(b).

In this matter, Mother testified that her base annual salary was $122,885.00. Mother acknowledged that in addition to her base salary, she had been receiving a comparability allowance in the amount of $30,000.00 per year as well as a retention allowance, which equaled 25% of her base salary. Mother explained that these additional allowances were provided by yearly contracts, were not guaranteed, and were dependent upon a number of factors. According to Mother's testimony, her average annual income for the years 2013-2015 was $148,611.00. The trial court determined Mother's gross income to be $12,250.00 per month, which equates to $147,000.00 per year. In doing so, the trial court noted that the allowances that Mother had been receiving in addition to her base salary were not guaranteed.

In determining that Mother's gross monthly income was $12,250.00, the trial court clearly utilized the average of Mother's income amounts for the years 2013-2015. In doing so, the trial court averaged Mother's variable income "over a reasonable period of time consistent with the circumstances of the case." *See* Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(b); *see also Hayes v. Hayes*, No. M2014-00237-COA-R3-CV, 2015 WL 1450998, at *4 (Tenn. Ct. App. Mar. 26, 2015) ("averages calculated using durations of a year or more have been consistently upheld by the courts.").

Upon our review of the record, we conclude that the evidence does not preponderate against the trial court's determination of Mother's gross income for the purposes of calculating child support. Discerning no reversible error with regard to the issues related to child support, we affirm the trial court's determination of Father's child support obligation and arrearage.

V. Expert Witness

Father argues that the trial court erred by determining the testimony of Mother's expert, Mr. Vance, to be credible and by denying Father's motion to strike Mr. Vance's testimony concerning advertising expenses. Our Supreme Court has opined as follows concerning expert witness testimony:

Generally, questions regarding the admissibility, qualifications, relevancy and competency of an expert's testimony are left to the discretion of the trial court. *McDaniel v. CSX Transportation, Inc.*, 955 S.W.2d 257, 263 (Tenn. 1997). Pursuant to Tenn. R. Evid. 703, a trial court must disallow testimony in the form of opinion or inference when the underlying facts or data indicate a lack of trustworthiness. *Id*. at 264-65. While similar language is not present in the federal rule, Tenn. R. Evid. 703 is "designed to encourage trial courts to take a more active role in evaluating the reasonableness of the expert's reliance upon the particular basis for [the expert's] testimony." *Id*. at 265. The trial court's ruling on these matters may only be overturned if the discretion is arbitrarily exercised or abused. *Id*. at 263-64.

*Seffernick v. Saint Thomas Hosp.*, 969 S.W.2d 391, 393 (Tenn. 1998).

Father asserts that Mr. Vance's "faulty assumptions and methodology" belie the credibility of his opinion regarding Father's income. Specifically, Father contends that Mr. Vance simply assumed that many unexplained expenses of Father's dental practice were actually Father's personal expenses, such that Mr. Vance ultimately added those expenses back to Father's income amount, erroneously inflating Father's income. Mother, to the contrary, disputes this characterization of Mr. Vance's methodology in her appellate brief.

The trial court found as follows with respect to Mr. Vance's expert opinion concerning Father's income for child support purposes:

After the extensive review of the documents from the Father's dental practice and other businesses['] income sources, as well as expenditures from Father's tax returns, both experts rendered almost diametrically opposite opinions as to Father's income, when viewed through the lens of the Internal Revenue Code and the Tennessee Child Support Guidelines. However, both experts did agree, after a further review of Father's general ledger and expenditures, that Father had classified a number of personal expenses as business expenses. The number of entries misclassified became quite contentious to the point that the case turned into the "battle of the experts." As evidence of how contentious and protracted this issue became, the Divorce Referee hearing alone lasted nearly seven (7) nonconsecutive days over a period of five (5) months.

* * *

- 19 -

Mother's expert reviewed Father's general ledger for Southwind Dental Care, which included its business credit card statements, the expenditures for [M3P], the truck pulling entity, W-2s, tax returns from February, 2009 through several months of 2016, as well as all of Father's available expenditures records from all of his businesses.

For federal income tax purposes, Father's habit was to provide all financial data to his accountant, Mr. Thomas. In reviewing Father's records, Mr. Vance found that there were substantial personal expenses, which were run through the Southwind Dental Care books, which were claimed as business expenses. By way of a few examples, private school tuition; vacations (unrelated to continuing dental education); payment to his then wife [E.M.] (In the middle of this matter, Father and [E.M.] became involved in an acrimonious divorce proceeding); attorney fees incurred in the divorce; child psychologist expenses; student loans; personal medical bills; country club bill; fitness club; judo lessons; massages; jewelry; and house furnishings (custom closet for Father's home) were all categorized as business expenses. These expenses were then deducted from Father's income in order to arrive at his adjusted from gross income for federal income tax and/or child support purposes.

In addition, Mr. Vance's review revealed that Father financed his truck-pulling hobby by taking money from Southwind Dental Care to make truck payments on the trucks used in competitions, equipment to carry the trucks, as well as fuel and maintenance for the trucks. Father placed on the trucks the name "Southwind Dental Care" and deducted the same as advertising expenses for his dental practice. No other businesses' name[s] were ever displayed on the trucks. [M3P] lost money from 2010 to 2015 and was never self-sustaining without monies from Southwind Dental Care. Finally, Father claimed depreciation, which Mr. Vance stated was proper for federal income tax purposes, but not for child support purposes under the Tennessee Child Support Guidelines. After going through all of Father's financial records and reviewing Father's testimony, Mr. Vance was of the opinion that Father had reported only 38.9% of his personal federal income on his tax returns from February 11, 2009 through May, 2015. Mr. Vance also testified that from February, 2011 to May, 2015 Father had under-reported his income by $1,927,421.00. Mr. Vance arrived at this opinion by disallowing the following: private school tuition payments; vacations (unrelated to continuing dental education); payments to his wife [E.M.]; and almost all of the truck pulling expenses which Father claimed as advertisement but Mr. Vance claimed were excessive promotional expenses unrelated to Father's dental practice (Father filed a Motion to Exclude Mr. Vance's opinion as an expert on the subject of

marketing [and] advertising); Mr. Vance also disallowed credit card payments which were personal in nature; and depreciation allowances. Mr. Vance further indicated that there were credit card records that were not provided to him by Father for the first eight (8) months of 2009, as well as certain credit card statements. As a result, Mr. Vance made certain financial assumptions about the missing financial document expenditures that Father claimed but did not have the supporting documentations to support the claims. Mr. Vance deemed those personal in nature. Also, with regard to Father's unavailable income documents for the missing months of 2009, Mr. Vance ascribed approximately $80,000.00 to Father's income, based upon Father's history of income earnings and his pattern and routine of deductions of certain expenses. Mr. Vance conceded that by going through all of Father's records, he may have double counted income in a few instances; but despite that admission, Mr. Vance believes his discrepancies were overall minimal compared to Father's gross understatement of income. Mr. Vance further stated that Father's understatement of income and improper claims of deductions represented one of the worst cases of understatement of income he has ever encountered.

During his testimony at trial, Mr. Vance explained that for the years 2011-2015, although Father's dental practice, of which he was the sole owner, reflected gross receipts in excess of one million dollars per year, Father reported income of only a fraction of that amount. Mr. Vance explained that Father's reported income was "extremely low . . . on a 1.3-1.4 million dollar . . . dental practice." As the trial court noted, Mr. Vance therefore reviewed the general ledgers and other documentation related to the dental practice in order to determine whether the expenses listed for the business were actually personal expenses of Father's that had been mischaracterized for the purpose of artificially lowering Father's income amount.

Mr. Vance testified in great detail concerning the various expenses that he believed had been inappropriately categorized as business expenses of Father's dental practice, including, *inter alia*, the purchase of personal vehicles for Father, fuel for those vehicles, Father's personal vacation expenses, Father's student loan payments, renovations to Father's personal residence, and payment of the Children's private school tuition. Mr. Vance acknowledged that there were certain expenses about which he had to make assumptions as to whether those expenses were personal or business-related. Mr. Vance explained that any such expenses were detailed on his report, which was provided to Father and his counsel in advance of the hearing with a request that the nature of those expenses be clarified. According to Mr. Vance, he was certain that "90-95 percent of what we had in there was going to be personal."

Father's counsel was allowed to thoroughly cross-examine Mr. Vance concerning his assumptions about certain expenses, and Father attempted to demonstrate that Mr. Vance mistakenly characterized many business expenses as personal in nature. However, much of Father's testimony was contradicted or at least called into question by rebuttal proof. Importantly, Father admitted during his testimony at trial that his tax returns did not reflect his actual income. Father also admitted that although he claimed in his discovery responses that his income was approximately $10,000.00 per month, he acknowledged in those same discovery responses paying personal expenses of over $22,000.00 per month.

Father's expert, Mr. Thomas, agreed that Father had paid some expenses from the business that were personal, such as child support, personal attorney's fees, repayment of student loans, and private school tuition for the Children. Mr. Thomas reviewed Mr. Vance's report and testimony and agreed that at least $400,000.00 in expenses should be added back to Father's income for the years 2009-2015. Furthermore, Mr. Thomas attempted to dispel the controversy concerning Father's other personal expenses paid from the business by explaining that the business had certain accumulated retained earnings that were kept in the business to be dispersed in later years. According to Mr. Thomas, because those retained earnings had already been subject to income tax in the year they accrued, it was unnecessary to add those earnings back to Father's income in the years in which they were spent.

Following his review of the testimony of Father and Mr. Thomas, Mr. Vance testified that his opinion regarding Father's income was unchanged. Mr. Vance stated that the income tax records from 2009 forward showed no tax paid on distributions. Therefore, according to Mr. Vance, no records had been produced to show that the business had previously taxed, retained earnings. Mother also testified that although Father's dental practice was part of the division of marital property in the parties' 2009 divorce, she had no knowledge of any retained earnings held by the business at that time.

The trial court ultimately found as follows concerning Father's income:

> In total, Mr. Vance opined that Father's average income from 2009-2011 was $42,929.00 per month. From 2011-2015, Father's average income was $50,551.00 per month.
>
> Mr. Thomas on the other hand opined that from 2009-2011, Father's average income was $24,327.00 per month. From the 2011-15, Father's average income was $31,552.00 per month.
>
> Since not all of Father's financial records were disclosed, the Court does not believe that either expert will ever know Father's exact income and expenditures. However, after reviewing the evidence that was

presented during the extensive Referee's hearing, this Court finds that although Mr. Vance's opinions were based upon some assumptions, as well as some admitted inaccuracies due in some part to lack of having all Father's financial data, Mr. Vance's figures were still closer to Father's true income than that of the figures arrived at by Mr. Thomas.

The Court further finds that there has been a material change in circumstances as a result of the significant variance in Father's income as well as Mother's income of more than fifteen percent (15%) from February, 2009 through May, 2015.

For purposes of child support, this Court finds that from February, 2009 through February, 2011, Father's monthly income was approximately $40,000.00 per month. . . . Further, after May, 2015 to present, Father's income for modification purposes was approximately $45,000.00 per month. The Court finds that Mother's income from May, 2015 to present was $12,250.00 per month. Mother carried health insurance on the children in the amount of $106.00 per month.

Following our thorough review of the record in this matter, we determine that the trial court did not abuse its discretion in finding Mr. Vance's testimony concerning Father's income and expenses to be credible. *See Seffernick*, 969 S.W.2d at 393. Mr. Vance's specialized knowledge "substantially assist[ed] the trier of fact to understand the evidence or to determine a fact in issue." *See* Tenn. R. Evid. 702. Mr. Vance's testimony was based upon facts and data "made known to the expert at or before the hearing" and were "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." *See* Tenn. R. Evid. 703. We conclude that Mr. Vance's opinion was not based on underlying facts or data that indicated a lack of trustworthiness. *See id*.

Father further argues that the trial court erred by declining to strike Mr. Vance's testimony concerning the "advertising" expenses related to Father's truck-pulling business. Mr. Vance added approximately $500,000.00 to Father's income for the years 2009-2016, representing the money that Father's dental practice paid to or on behalf of his truck-pulling enterprise, M3 Pulling, Inc. ("M3P"). Mr. Vance opined that these expenses were not legitimate advertising expenses for the dental practice because most of the truck-pulling events were held in other states. According to Mr. Vance, M3P was a means for Father to finance his personal hobby through the dental practice. Father's counsel moved to strike Mr. Vance's testimony in this regard, arguing that Mr. Vance was not an expert in the marketing or advertising of dental practices. The referee denied the motion, stating that she would form her own opinion of "what weight I will give to any information that [Mr. Vance] has concerning whether or not it's good practice,

whether or not it's appropriate, and how to give weight totally to the advertising aspect of these expenses."

The trial court's May 15, 2018 order states as follows with regard to the expenses concerning M3P:

Father had developed a hobby of competitive truck pulling; the object of which was to determine which competitors' trucks could pull the greatest amount of weight the greatest distance. The entity for this hobby was [M3P] Pulling, Incorporated doing business as Pinnacle Online Pulling Ads. The competitions were held almost exclusively outside of Shelby County and the State of Tennessee, with most of them being held in Kentucky, South Carolina, Indiana, Ohio, Missouri, New York and Pennsylvania.

* * *

Father financed his truck-pulling hobby by taking money from Southwind Dental Care to make truck payments on the trucks used in competitions, equipment to carry the trucks, as well as fuel and maintenance for the trucks. Father placed on the trucks the name "Southwind Dental Care" and deducted the same as advertising expenses for his dental practice. No other businesses' name[s] were ever displayed on the trucks. [M3P] lost money from 2010 to 2015 and was never self-sustaining without monies from Southwind Dental Care.

The trial court therefore appeared to credit Mr. Vance's testimony concerning the personal nature of the expenses related to M3P by generally accepting Mr. Vance's opinion with regard to Father's income amount. Again, we determine that no abuse of discretion occurred. *See Seffernick*, 969 S.W.2d at 393.

Mr. Vance's testimony concerning his knowledge with regard to appropriate business expenses "substantially assist[ed] the trier of fact to understand the evidence or to determine a fact in issue." *See* Tenn. R. Evid. 702. Mr. Vance's testimony was based upon facts and data that were "made known to the expert at or before the hearing" and were "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." *See* Tenn. R. Evid. 703. We conclude that Mr. Vance's opinion was not based on underlying facts or data that indicated a lack of trustworthiness. *See id*. We therefore affirm the trial court's reliance on Mr. Vance's testimony in reaching its determination concerning Father's true income for child support purposes.

## VI. Attorney's Fees and Expert Witness Fees

For different reasons, each party contends that the trial court erred in its award of attorney's fees and expert witness fees to Mother. Mother asserts that the trial court should have awarded her the entire amount of her attorney's fees and expert witness fees sought while Father argues that the trial court erred by awarding any amount of attorney's fees or expert witness fees to Mother. Similarly, both parties argue that they should receive an award of attorney's fees related to this appeal.

### A. Attorney's Fees and Expert Witness Fees at Trial

Father argues that the trial court's award to Mother of attorney's fees in the amount of $55,000.00, as well as expert witness fees in the amount of $30,000.00, was improper. Father states that he incurred attorney's fees and expenses through July 28, 2017, in the amount of $88,541.06. Mother claimed attorney's fees and expenses incurred through April 30, 2017, in the amount of $110,677.58. Mother's expert witness, Mr. Vance, charged fees in the amount of $53,923.37. As Father acknowledges in his appellate brief, neither party objected to the reasonableness of the amounts of attorney's fees incurred in this matter.

Father asserts, however, that Mother was not entitled to receive an award of attorney's fees because, according to him, Mother unsuccessfully argued for a retroactive modification of child support "despite the clear language of both the statute and controlling case law." In addition, Father asserts that Mother increased the attorney's fees for both parties on many occasions. In contrast, Mother asserts that her fees incurred were needlessly and significantly increased by Father's actions and inactions during the pretrial phase of the litigation.

The version of Tennessee Code Annotated § 36-5-103(c) (2014) applicable to this action provided:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

This statutory provision has been interpreted as authorizing a trial court to award attorney's fees incurred in an action to increase child support. *See Wiser v. Wiser*, 339

S.W.3d 1, 20 (Tenn. Ct. App. 2010); *Huntley v. Huntley*, 61 S.W.3d 329, 341 (Tenn. Ct. App. 2001) (interpreting the statute as giving courts authority to award fees in child support modification cases generally); *Williams v. Williams*, No. E2004-00423-COA-R3-CV, 2005 WL 1219955, at *9 (Tenn. Ct. App. May 24, 2005) (concluding that the parent who successfully sought an increase in child support "was entitled to recover such reasonable attorney fees as were fixed and allowed by the Trial Court in its discretion"). Such an award of attorney's fees is within the trial court's discretion and is reviewed by this Court utilizing the deferential abuse of discretion standard. *See Huntley*, 61 S.W.3d at 341.

In this action, Mother incurred attorney's fees and expenses through April 30, 2017, in the amount of $110,677.58 in pursuing an increase in Father's child support obligation. Mother's counsel filed an affidavit supporting this amount. Father acknowledges on appeal that he never claimed that Mother's attorney's fees were unreasonable; Father's counsel simply argued that each party should pay his or her own fees. Although the trial court awarded to Mother an increase in Father's child support obligation, the trial court awarded to Mother approximately one-half of her total attorney's fees incurred, stating:

> This Court finds that Mother has prevailed on the issue of the need for child support based upon the recalculation provision as well as the modification petition. As a result, she is entitled to and is hereby awarded reasonable attorney fees, because she has pursued many discovery motions as well as hearings on the same in order to ascertain Father's income. It should be noted that Mother has also pursued several motions and positions, which have been denied by the Court for which attorney fees should not be awarded.
>
> The parties did not object to [the] other's contractual attorney fees as to their reasonableness . . . . The parties objected only to whether the other party should be responsible for the other's fees based upon what legal actions were pursued, what was ultimately accomplished or not accomplished by such action and the part[y's] present ability to pay his or her own attorney fees. This Court finds Mother[] incurred considerable attorney fees in this matter due mainly because Father did not provide accurate and timely records of his income. This Court, therefore, finds and will award attorney fees to Mother in the amount of $55,000.00.

With respect to awards of attorney's fees in cases wherein a parent has sought a modification of child support, this Court has explained:

> "In cases involving the . . . support of children, . . . it has long been the rule in this State that counsel fees incurred on behalf of minors may be

recovered when shown to be reasonable and appropriate." *Deas v. Deas*, 774 S.W.2d 167, 169 (Tenn. 1989). The *Deas* Court stated: "There is no absolute right to such fees, but their award in . . . [child] support proceedings is familiar and almost commonplace." *Id*. at 170; *accord Taylor v. Fezell*, 158 S.W.3d 352, 360 (Tenn. 2005) (quoting *Deas*). This Court has explained "that the award of fees is for the benefit of the child and is a necessary part of, or inseparable from, the child's right to support." *Evans* [*v. Evans*], [No. M2002-02947-COA-R3-CV,] 2004 WL 1882586, at *12 [(Tenn. Ct. App. Aug. 23, 2004)]. "[F]ee awards in child support cases . . . protect the child's, not the parent's, interests and remedies." *Id*. (citation omitted).

*Wiser*, 339 S.W.3d at 21.

In the instant action, Mother prevailed in her efforts at the trial court level to demonstrate that a significant variance existed warranting an increase in Father's child support obligation. Therefore, the trial court properly awarded attorney's fees to Mother pursuant to Tennessee Code Annotated § 36-5-103(c). Furthermore, as our Supreme Court has explained:

The trial court's determination of a reasonable attorney's fee is "a subjective judgment based on evidence and the experience of the trier of facts," and Tennessee has "no fixed mathematical rule" for determining what a reasonable fee is. Accordingly, a determination of attorney's fees is within the discretion of the trial court and will be upheld unless the trial court abuses its discretion. We presume that the trial court's discretionary decision is correct, and we consider the evidence in the light most favorable to the decision. The abuse of discretion standard does not allow the appellate court to substitute its judgment for that of the trial court, and we will find an abuse of discretion only if the court "applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employ[ed] reasoning that causes an injustice to the complaining party." *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *see also Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

*Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011) (other internal citations omitted). Upon our thorough review of the record, we conclude that the trial court's award of $55,000.00, represented a reasonable amount of attorney's fees incurred by Mother in protecting the Children's interest in the appropriate amount of child support. This award did not constitute an abuse of discretion and should be affirmed.

- 27 -

Concerning the award to Mother of $30,000.00 in expert witness fees, the trial court stated:

> [T]he Court will note that Mr. Vance rendered valuable work and unearthed considerably more of Father's income than Father's sworn interrogatory response wherein he stated that he made only $10,000.00 per month. Though some [of] Mr. Vance's calculations were based upon assumptions and some admitted inaccuracies, the Court will award Mr. Vance an expert fee of $30,000.00 as opposed to his full expert fees of $53,923.37.

Tennessee Rule of Civil Procedure 54.04(2) provides:

> Costs not included in the bill of costs prepared by the clerk are allowable only in the court's discretion. Discretionary costs allowable are: reasonable and necessary court reporter expenses for depositions or trials, reasonable and necessary expert witness fees for depositions (or stipulated reports) and for trials . . . .

This Court reviews an award of discretionary costs pursuant to an abuse of discretion standard. *Carpenter v. Keppler*, 205 S.W.3d 474, 489 (Tenn. Ct. App. 2006).

Having reviewed the trial court's findings and the entire record, we conclude that the trial court's award to Mother of a portion of the fee charged by her expert witness was logical and reasonable. We therefore affirm the trial court's judgment regarding this issue, determining that the court did not abuse its discretion.

### B. Attorney's Fees on Appeal

Each party has sought an award of attorney's fees on appeal. As this Court has elucidated concerning such awards:

> An award of attorney's fees is available only if provided for by statute, contract, or a recognized equitable ground. *Parchman v. Parchman*, No. W2003-01204-COA-R3-CV, 2004 Tenn. App. LEXIS 768, at *15, 2004 WL 2609198 (Tenn. Ct. App. Nov. 17, 2004) (quoting *Austin Powder Co. v. Thompson*, No. 03A01-9607-CV-00229, 1996 Tenn. App. LEXIS 805, at *5, 1996 WL 718291 (Tenn. Ct. App. Dec.16, 1996)). "In divorce cases the recovery of attorney's fees is permitted by statute, which provides that a spouse seeking enforcement of an alimony or custody award may be granted attorney's fees." *Id*. (citing Tenn. Code Ann. § 36-5-103(c) (2003)). Furthermore, it is in the sole discretion of this court whether to award attorney's fees on appeal. *See* [*i*]*d*. at *15-16 (citing Tenn. Code Ann. § 36-5-103(c) (2003); *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn.

Ct. App. 1995)). As such, when this Court considers whether to award attorney's fees on appeal, we must be mindful of "the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal, whether the requesting party sought the appeal in good faith, and any other equitable factor that need be considered." *Dulin v. Dulin*, No. W2001-02969-COA-R3-CV, 2003 Tenn.App. LEXIS 628, at *26-27, 2003 WL 22071454 (Tenn. Ct. App. Sept. 3, 2003) (citing *Folk v. Folk*, 210 Tenn. 367, 357 S.W.2d 828, 829 (Tenn. 1962)); *see also Parchman*, 2004 Tenn. App. LEXIS 768 at *15-16, 2004 WL 2609198.

*Parris v. Parris*, No. M2006-02068-COA-R3-CV, 2007 WL 2713723, at *13 (Tenn. Ct. App. Sept. 18, 2007).

In this matter, both parties have demonstrated an ability to pay attorney's fees, and neither party has been successful in procuring a reversal of the trial court's ruling on appeal. We therefore decline to award attorney's fees incurred on appeal to either party.

## VII. Conclusion

For the foregoing reasons, we affirm the trial court's judgment in its entirety. We decline to award attorney's fees incurred on appeal to either party. Costs on appeal are assessed one-half to the appellant, Andrea (Messer) Schwager, and one-half to the appellee, Timothy Scott Messer. This case is remanded to the trial court for enforcement of its judgment and collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE